## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ALIREZA BAKHTIARI**
**PLAINTIFF**

**V.**

**SPAULDING**
*RESPONDENT:* **IN INDIVIDUAL**
**AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,**
**ALLENWOOD, PENNSYLVANIA**

**REEDY**
*RESPONDENT:* **IN INDIVIDUAL**
**AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,**
**ALLENWOOD, PENNSYLVANIA**

**HAUSE**
*RESPONDENT:* **IN INDIVIDUAL**
**AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,**
**ALLENWOOD, PENNSYLVANIA**

**GALLOZA**
*RESPONDENT:* **IN INDIVIDUAL**
**AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,**
**ALLENWOOD, PENNSYLVANIA**

**MARTIN**
*RESPONDENT:* **IN INDIVIDUAL**
**AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,**
**ALLENWOOD, PENNSYLVANIA**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
**SCRANTON**

JAN 0 4 2017

PER _____
DEPUTY CLERK

CIVIL CAUSE NO.: NOT ASSIGNED

MAIZE
*RESPONDENT:* **IN INDIVIDUAL
AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,
ALLENWOOD, PENNSYLVANIA**                    )
)
)
)
)
)

FELTON
*RESPONDENT:* **IN INDIVIDUAL
AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,
ALLENWOOD, PENNSYLVANIA**                    )
)
)
)
)

SLUKOM
*RESPONDENT:* **IN INDIVIDUAL
AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,
ALLENWOOD, PENNSYLVANIA**                    )
)
)
)
)

BITTENBENDER
*RESPONDENT:* **IN INDIVIDUAL
AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,
ALLENWOOD, PENNSYLVANIA**                    )   CIVIL CAUSE NO.: NOT ASSIGNED
)
)
)
)

LOZANO
*RESPONDENT:* **IN INDIVIDUAL
AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,
ALLENWOOD, PENNSYLVANIA**                    )
)
)
)
)

JOHN DOE-1 (Leiutenant)
*RESPONDENT:* **IN INDIVIDUAL
AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,
ALLENWOOD, PENNSYLVANIA**                    )
)
)
)
)

JOHN DOE-2
*RESPONDENT:* **IN INDIVIDUAL
AND OFFICIAL CAPACITIES**
*SERVE:* **FCI ALLENWOOD,
ALLENWOOD, PENNSYLVANIA**                    )
)
)
)
)
)

JOHN DOE-3 (Leiutenant)
*RESPONDENT:* IN INDIVIDUAL
AND OFFICIAL CAPACITIES
*SERVE:* FCI ALLENWOOD,
ALLENWOOD, PENNSYLVANIA

)
)
)
)
)
)

JUSTIN J.
BLEWITT     AUSA, PRISON LITIGATION UNIT
*RESPONDENT:* IN INDIVIDUAL
AND OFFICIAL CAPACITIES
*SERVE:* AUSA OFFICE, SCANTON, PA
PHILADELPHIA, PENNSYLVANIA

)
)
)
)
)
)
)
)

G. THIEL     AUSA, PRISON LITIGATION UNIT
*RESPONDENT:* IN INDIVIDUAL
AND OFFICIAL CAPACITIES
*SERVE:* AUSA OFFICE, SCANTON, PA
PHILADELPHIA, PENNSYLVANIA

)
)
)
)
)

JOANNE H.
HOFFMAN     AUSA, PRISON LITIGATION UNIT
*RESPONDENT:* IN INDIVIDUAL
AND OFFICIAL CAPACITIES
*SERVE:* AUSA OFFICE, SCANTON, PA
PHILADELPHIA, PENNSYLVANIA

)
)
)     CIVIL CAUSE NO.: NOT ASSIGNED
)
)
)
)

KATE
MERSHIMER     AUSA, PRISON LITIGATION UNIT
*RESPONDENT:* IN INDIVIDUAL
AND OFFICIAL CAPACITIES
*SERVE:* AUSA OFFICE, SCANTON, PA
PHILADELPHIA, PENNSYLVANIA

)
)
)
)
)
)

MICHAEL A.
CONSIGLIO     AUSA, PRISON LITIGATION UNIT
*RESPONDENT:* IN INDIVIDUAL
AND OFFICIAL CAPACITIES
*SERVE:* AUSA OFFICE, SCANTON, PA
PHILADELPHIA, PENNSYLVANIA

)
)
)
)
)
)
)
)

MICHAEL TAFLESKI
*RESPONDENT:* IN INDIVIDUAL
AND OFFICIAL CAPACITIES
*SERVE:* BOP REGIONAL OFFICE,
PHILADELPHIA, PENNSYLVANIA

)
)
)
)
)
)
)

SARAH QUREISHI                                    )
RESPONDENT: IN INDIVIDUAL                          )
AND OFFICIAL CAPACITIES                            )
SERVE: BOP CENTRAL OFFICE,                         )
WASHINGTON, DC                                     )
                                                  )
UNITED STATES OF AMERICA                           )        CIVIL CAUSE NO.: NOT ASSIGNED
RESPONDENT: IN GOVERNMENTAL AND                    )
CORPORATE CAPACITIES                              )
SERVE: CIVIL LITIGATIONN DIVISION                  )
US DEPARTMENT OF JUSTICE                           )
WASHINGTON, DC                                     )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )
//                                                )

BAKHTIARI-PETITION-PAGE- 1v -

 **TABLE OF CONTENTS**

Table of Contents......................................................v

Nature of the Suite (Intro.)..........................................1

Venue and Jurisdiction................................................2

Defendants............................................................3

PLRA-Exhaustion.......................................................6

FTCA-Exhaustion.......................................................7

Fabrication of "Failure to Exhaust" Defense...........................8

BOP Program Statements................................................9

Facts Common to All Counts...........................................10

Counts of Claims.....................................................21

Conclusion (Relief.).................................................40

Verification and Signature...........................................41

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALIREZA BAKHTIARI,            )
PLANTIFF                      )
                             )
                             )
V.                           )        CIVIL CAUSE NO.: NOT ASSIGNED
                             )
STEVEN SPAULDING ET. AL.     )
DEFENDANTS.                  )
                             )
                             )
                             )
                             )
                             )
                             )

## JURY TRIAL DEMANDED

## PETITION

COMES NOW, ALIREZA BAKHTIARI ("Bakhtiari"), pro se plaintiff, and sets forth his initial petition as follows:

### Introduction (Nature of the Suite)

1. Bakhtiari is a citizen of Iran, who was at all relevant times an inmate in federal custody. Bakhtiari was serving a sentence of 51 months for his conviction of "Potential Hindrance to Official Proceedings" [18 U.S.C. § 1512(c)(2)].

2. The defendants in this case brutalized, battered and physically and psychologically tortured Bakhtiari for several hours on January of 2016, and then they refused to provide medical care for the endless harms they had inflicted themselves. Then, they placed Bakhtiari in a cell with a known white-supremacist and instructed him to torture and beat Bakhtiari through the night.

3. The defendants made such commissions and omissions, because according to them Bakhtiari had called them all "rejects" and because, According to one of the defendants (Reedy): "Folks in Iran likes [sic] to say Death to America!" According to one of the defendants (Martin), Bakhtiari is here "as a hitman, to kill Americans!" For their prejudice, racial and hateful animus, merely and but-for this, the defendants dehumanized Bakhtiari in the most barbaric ways.

## VENUE AND JURISDICTION

This Honorable Court's jurisdiction is invoked pursuant to 28 U.S.C.§ 1331, 28 U.S.C. §1346(b) and FTCA (§ 2671 to 80); Bivens v. Narcotics Agents et. al.; The acts and omissions alleged herein occured within the geographical confines of Middle District of Pennsylvania.

This Honorable Court has proper jurisdiction and is the proper venue for the foregoing cause of action.

## DEFENDANTS

**STEVEN SPAULDING** is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal involvement in the actions, commissions and omissions alleged herein.

**REEDY** is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal involvement in the actions, commissions and omissions alleged herein.

**HAUSE** is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal involvement in the actions, commissions and omissions alleged herein.

**LILIAN GALLOZA** is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal involvement in the actions, commissions and omissions alleged herein.

**MARTIN** is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal involvement in the actions, commissions and omissions alleged herein.

**MAIZE** is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal involvement in the actions, commissions and omissions alleged herein.

**FELTON** is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal involvement in the actions, commissions and omissions alleged herein.

**SLUKOM** is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal involvement in the actions, commissions and omissions alleged herein.

__BITTENEBNDER (MR.)__ is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

__LOZANO__      is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

__JOHN DOE-1__      is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

__JOHN DOE-2__      is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

__JOHN DOE-3__      is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

__JUSTIN J. BLEWITT__   is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

__G. THIEL__      is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

__JOANNE M. HOFFMAN__   is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

__KATE MERSHIMER__      is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

MICHAEL A. CONSIGLIO is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

MICHAEL TAFLESKI    is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

SARAH QUREISHI    is and was at all relevant times employed by the United States as its official, and is a defendant in the instant suite in both individual and official capacities, and had direct personal  involvement in the actions, commissions and omissions alleged herein.

The United States of America is a defendant in this suite in its corporate and governmental capacities.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## EXHAUSTION-PLRA

### See Plaintiff's Declaration of Facts in Enclosure: Supporting Exhaustion Issues

In spite of the defendants full efforts to reduce the administrative remedies unavailable, Bakhtiari fully exhausted. Plaintiff utilized numerous requests to staff, informal resolutions attempts, BP-9, BP-10, BP-11 and letters to the legal counsel and some of the defendants themselves.

Bakhtiari's attempts to exhaust were fully in compliance with BOP Program Statement 1330.18, and 28 F.C.R. §542.13 thorugh § 542.19 and also with the full tenets of the Administrative Procedure Act.

## EXHAUSTION-FTCA

**See Plaintiff's Declaration of Facts in Enclosure: Supporting Exhaustion Issues**

**28 U.S.C. § 2401(B)**

1-   Bakhtiari notified the BOP Officials of the incidents alleged and the hamrs incured.

2-   Bakhtiari exhausted pursuant to PLRA, then utilized Standard Form-95 (FTCA, major claims) and wrote to the Regional Counsel for BOP, North East.

3-   As pro se plaintiff, Bakhtiari had the authority to receive, entertain and settle the resolution offers and possibilities.

4-   The defendants, through counsel had the authority to offer--, entertain and settle the resolution offers and possibilities.

5-   The parties practiced these authorities and options. the defendants, including the United States and the individual defendants, denied the possibility through their counsel -- BOP North East Regional Counsel -- Philadelphia Office.

## DEFENDANTS' DECEITFUL ATTEMPTS TO FABRICATE THE DEFENSE OF "FAILURE TO EXHAUST"

See Plaintiff's Declaration of Facts in Enclosure: Supporting Exhaustion Issues

As a part of the notice pleading framework within the federal courts and the initial petitioning standards before this Honorable Court, plaintiff intends to inform this Honorable Court of the unethical and unlawful efforts which the defendants, including Mr. Spaulding and Mr. Tafleski and other attorney involved made for the inappropriate purpose of reducing the administrative remedies unavailable and in this tactical manner, using such chicanery, gin up and fabricate the defense of "failure to exhaust".

Plaintiff respectfully calls to the attention of this Honorable Court the relevant parts in the declaration enclosed.

## BOP PROGRAM STATEMENTS IMPLICATED

The actions and omissions alleged and complained of, are not matters of "judgment call" or discretion. There is specific and fully enunciated, policies, program statement and Federal Codes of Regulation about each and every issue raised in this petition.  Some of these program statements are as follows:

- 5566.06: Use of Force
- 5270.10: Special Housing Program
- 5212.07: Unit Control Program
- 5500.13: Correctional Procedural Manual
- 6000.05: Health Services Manual
- 3420.11: Standard of Employee Conduct
- 1210.24: Internal Affairs
- 5521.05: Inmate Search and Seizure
- 5265.14: Correspondance
- 5800.16: Mail Management Manual
- 1330.10: Administrative Remedy
- other program statements

## FACTS COMMON TO ALL COUNTS

1. Bakhtiari is a citizen of Iran, who was at all relevant times an inmate in federal custody. Bakhtiari was serving a sentence of 51 months for his conviction of "Potential Hindrance to Official Proceedings" [18 U.S.C. §1512(c)(2)].

2. Late 2015, Bakhtiari was transferred to FCI Allenwood.

3. One day, in November of 2015, Bakhtriari was walking back to his assigned housing unit when he passed through a check-point where Brewagner was training    new BOP officer employees. The new staff and Brewagner searched Bakhtiari. After the search Bakhtiari addressed the new officers: "Congratulations on your new career!" The officers answered: "Thank you!" Bakhtiari retorted: "That is ok that all other law enforcement agencies have rejected you. There is always a place in BOP for rejected staff!" Brewagner became irritated and irate and ordered: "Not funny dude! Roll on!" Bakhtiari proceeded back to his assigned housing unit.

4. On or about November 12th 2015, Brewagner and Galloza took Bakhtiari to the Lieutenant Hause's office for an interview, for reasons none disclosed to Bakhtiari. Galloza alleged that Bakhtiari's "well-being was in danger". She alleged that she had heard a prison gang was targetting Bakhtiari and that they had to place Bakhtiari in "protective custody". Galloza, Hause and Brewagner offered no further details or elaboration on their alleged story.

5. Prior to taking Bakhtiari to the Special Housing Unit (SHU), Brewagner ordered Bakhtiari: "Now why don't you tell the Leiutenant about the comment you made to the new-coming staff?" Galloza ordered: "Yes, go ahead, let him hear it too!" Bakhtiari first reminded the group that his statement was protected by the free speech clause. Bakhtiari proceeded to repeat his statement about "rejectee staff".

6. Hause also became irate. Angrily, he proceeded to say: "We are in central pennsylvania, I'm just a country boy, I don't give a fuck about what some **sand nigger camel jockey** like you thinks! Go ahead and write me up, I don;t give a fuck! Take him away to the SHU! You are gonna rot in the SHU!"

7. Few days later, the Special Investigation Services (SIS) and Bakhtiari's correctional

unit team, informed Bakhtiari that he was being transferred to another institution "for his own safety." They did not elaborate on their alleged story of the "gang threat".

8. Bakhtiari suffers from a heart condition and post-traumatic stress disorder (PTSD). He regularly takes, and should take, some much needed medicine to control the heart and stress disorder conditions. Since November 12th 2015, the staff in the SHU would not provide Bakhtiari his medicine. Particularly, officers Lozano and Trithol who attended to the SHU would ignore Bakhtiari's repeated requests to contact the Health Services. Bakhtiari handed Lozano and Trithol a written request few times, requesting his medicine. Apparently the notes never made it to the Health Services. The staff of the Health Services also made frequent visits to the SHU. They also ignored Bakhtiari's requests for his much needed medicine.

9. Few days prior to 19th November of 2015, Bakhtiari promised Lozano that he would certainly file a lawsuit against him for ignoring his medical needs and not taking his lack of medicine seriously. Lozano responded: "I don't give a fuck!"

10. On or about 19th November of 2015, Bakhtiari was going through a debilitating withdrawal from his lacking medicine. While he was climbing down his upper bed, he felt severely dizzy and nausious, he fell from the ladder. His room-mate activated the emergency button. Trithol and Lozano came to check on Bakhtiari and took him to see medical care. While they were walking Bakhtiari to the temporary holding cell, Lozano turned to Trithol and stated: "Officer did you hear that? this A-rab just threatened to kill me!" Trithol stated: "Oh yes I heard that too!" Bakthiari protested: "I never said anything to you     or to anyone. I just need to see the doctor! I need my medicine!" Lozano said: "No you just threatened me, I am going to write you up and she will back me up!" Trithol stated: "I sure will!"

11. Dr. Camp from psychology came to see Bakhtiari. she confirmed that the health Services was with-holding Bakhtiari's medicine, according to her "for unknown reasons". But Dr. Camp stated that she had ordered Bakthiari's medicine delivered "as soon as possible."

12. On or about December-3rd- 2015, Bakhtiari appeared before Bittenbender who was sitting as Disciplinary Hearing Adjudicating Officer (Incident Number. 2785307)

Bittenbender was to adjudicate Lozano's claim that Bakhtiari's had threatened him. Bittenbender, began the hearing by protesting of apparently, Bakhtiari had called him and his wife (or former wife) "rejectees". Bittenbender went on bitterly protesting that Bakhtiari was condescending to him and the staff. Bakhtiari asked Bittenbender to withdraw as the adjudicator due to his lack of objectivity. Bittenbender refused to withdraw.

13. Bittenbender blatantly ignored the premises of disciplinary hearing for inmates as set out in _Wolff v. McDonnel_ by the Supreme Court. He refused to allow witnesses or written testimony. Bakhtiari requested presence of witnesses: Dr. Camp, Lozano, Trithol and his room-mate at the SHU. Bittenbender refused to allow any of such witnesses or evidentiary defense by Bakhtiari. Bittenbender disallowed 80 days of good time credit, on the basis of the hearing which he conducted with such extreme bias. The Regional Office and the Central Office of BOP, both failed to address Bakhtiari's appeals from Bittenbender's decisions, actions and omissions.

14. In late December of 2015, Lozano brought another inmate -- Chavez Champaign -- who was known all across the institution as the most **violent** white-supremacist, to be Bakhtiari's room-mate in the SHU.

15. As soon as Champaign saw Bakhtiari he began protesting: "This dude ain white! I'm not goin in there! If you put me in there I'm gonna fuck him up!" Lozano laughed and stated: "sure, please go ahead and beat him up!" They opened the door (cell Z02-05) and placed Champaign in Bakhtiari's cell.

16. As soon as Champaign entered Bakthiari's cell, at once, he took his shirt off and showed Bakhtiari his tattoo of a swastika. Champaign stated: "You see this? I ain supposed to be here, you ain either! you should go live with a nigger and I with my own kind! why do these people hate you so much? they told me to go ahead and fuck you up! why?" Bakhtiari responded: "We are in prison, we have no choice of who we live with, we are at their mercy. Let's make it work, I'm awaiting transfer. They hate me for my skin color, nationality and something I said to them!" Champaign proceeded to say: "I don't have any good time [credit] left. They can't take nothing from me! I'll go ahead and fuck you and one of them up!" Then Champaign began banging hard on the cell door and

asking for his Siriquel and other psychiatrist medicine he was prescribed so he could sleep.

17.  After receiving his medicine he proceeded and went to sleep.

18. Champaign is no ordinary human being. He deserves his reputation amongst the staff and inmates. Champaign is the most bigoted and violent amongst the inmates. He has at least 35 serious felonies and counts of violence in his past. He direly needs his Seriquel and other psychiatric medicine. If he feels stressed out or duressed any way, he becomes dangerously violent. Champaign worships his swastika tattoo and all that the swastika stands for. during his time in the cell with Bakhtiari he repeatedly, everyday, referred to Bakhtiari as a **nigger, terrorist, illegal shit, towel head and etc**. Numerous times a day he threatened Bakhtiari by violence and told Bakhtiari to leave and find a **nigger cell.** Bakhtiari tried so many ways to plead and reason with Champaign. Champaign was scheduled to be released unconditionally in January of 2016. He has lost all his good time credit due to various infractions and violence while he was housed in high security penitentiary since early 2000's.

19. FCI allenwood SHU also housed inmates from the High Security Penitentiary next door (USP Allenwood). Bakhtiari and even Champaign himself pleaded with Spaulding, John Doe, Galloza, Lozano, Martin, Felton others, to place Champaign in a cell with inmates from the high security penitentiary in the SHU. The above individuals, hell-bent to torture Bakhtiari and bring him harm, refused to ---- separate Champaign from Bakhtiari.

20. Spaulding, John Doe, Galloza, Lozano, Martin, Felton and other defendants in this suite, ignored Bakhtiari's pleas and warnings. They ignored even Champaign's warnings. **Out of malice with calculated intent**, they placed Champaign in the same cell with Bakhtiari, making sure that Bakhtiari would be battered and assaulted by the well known most violent white-supremacist.

21. Days passed and Champaign went through his daily roller-coaster of sleep, agitations, violent outbursts and threats.

22. On or about  **9th** January of 2016, Champaign took his histeria and violence to a whole new level. He asked the medical staff for special help. He told the nurse: "My

Siriquel ain working, I'm way into my head. I'm about to go to the street after years and I'm all stressed out. Give me something to calm me down!" The nurse declined.

23. By about January 9th 2016 (noon time) Champaign was more than ever frightening and threatening. He told Bakhtiari: "If you don't leave this cell right now, I'll strangle you!" Bakhtiari pushed the duress button, and Martin and Felton showed up. Bakhtiari begged them to take him out of the cell. They refused, they stated that they saw "no emergencies." Bakhtiari pushed the button again, the same two came back and Bakhtiari begged them again. This time they took Bakhtiari and Champaign out of the cell and took them to two separate holding cells. The officers summoned Galloza and she came to the holding cells with Brewagner.

24. Galloza and Brewagner came to Bakhtriari's temporary holding cell and stated: "So! what could us rejects do for you today?" Bakhtiari pleaded with Galloza, and recounted the racial tirades, threats, violent outbursts and the imminent danger from Champaign. Bakhtiari pleaded and stated: "I'm Iranian, Champaign is a white-supremacist. He is proud of his white-supremacy and his swastika tattoo. He keeps threatening and promising to kill me. He is actually very dangerous because of his stress level, history of violence, his medicine is not working. **Please do not** place me back in the same cell with him."

25. Galloza told Bakhtiari to strip down and she checked for visible signs of harm. She saw none. She told Bakhtiari: "He has not hit you yet! So we do not need to separate you! you are going back there with him!" Bakhtiari continued begging and pleading. Galloza ignored the requests. There were at the time tens if not hundreds of cells empty and available on the SHu at FCI Allenwood. Bakhtiari reminded Galloza of such, but Galloza was so consumed with rage, anger, prejudice and retaliatory animus over the "rejected" comment. She, like the rest of the defendants was intent to see Bakhtiari harmed in the hands of a violent white-supremacist.

36. Galloza held a meeting at the time with Brewagner, Martin, Felton, John Doe-2 and Maize. After the meeting Galloza kept protesting Bakhtiari's comment and notion of the "rejectee" and kept repeating that Bakhtiari was "going back in there!" Another officer (John Doe-2) reminded Galloza that the corner (cell Z02-12) was empty and available.

Galloza responded "No, he is going back in with Champaign!"

37. Felton hand-cuffed Bakhtiari, extremely tightly and ignored Bakhtiari's objection that the hand cuff was cutting into his flesh. Felton, while walking Bakhtiari up the stairs, abruptly pulled on the hand-cuffs in abuse and made Bakhtiari bend painfully. Then he said: "See what kind of things rejectees can do?!"

38. Galloza, Berwagner, Martin, Felton, Maize, John Doe-2, while they had Bakhtiari in extremely tight hand-cuffs walked him to cell Z02-05, where Champaign was. Galloza told Champaign: "Here, we brought your cellie back!"Champaign became very irate, aggressive and loud, began shouting: "He ain coming here! I don wan him here! take his ass somewhere else! he ain comin here!" Galloza stated: "Yes he is!"

38. Galloza opened the door and Bakhtiari begged her one last time. She shook her head. Bakthiari entered the cell. Champaign became highly animated and began shouting loud and cursing. Bakhtiari felt very frightened and felt in danger. While he was still in extremely tight hand-cuffs, Bakhtiari walk out of the cell, but away from Galloza. After Bakhtiari passed Galloza and entered the hall-way, Maize and Martin attacked Bakhtiari and threw him on the concrete floor. While Bakhtiari's wrists were still in tight cuffs, Martin hit Bakhtiari's head to the concrete floor and Bakhtari's glasses flew off his head and broke on the spot.

39. Right in the eyes of camera no. 08-13 and three other cameras in cell Z02-05, in range Z02 in FCI Allenwood, the following officers physically assaulted, battered and abused Bakhtiari: Maize, Martin, Felton, John-Doe-2, Galloza, Brewagner and others.

40. defendants named above, transferred Bakhtiari to the same holding cell on the First Floor of the SHU. They placed Bakhtiari on the floor and sat on his body parts, such as legs, arms, chest and back. Martin sat on Bakhtiari's chest. Bakhtiari began gasping for air, he begged Martin to let him breath. Martin answered: "Shut the fuck up! so you like to kill Americans?" Bakhtiari foresaw his own imminent death in their hands. So he began praying. Martin got off of Bakhtiari for a few moments, then sat back down.

41. Galloza ordered her staff to bring a camera to record the incident. As she turned her camera on, Martin got off Bakhtiari's chest. But the others were still physically abusing Bakhtiari. Galloza turned her camera on and began fabricating a farse. She stated, falsely,

that Bakhtiari "had attempted to assault her, but had missed!" she also fabricated the falsity that in the incident "minimal force was used!" While Bakhtiari was lying on the floor under the weights of these officers, they made jokes about being rejectees.

42. While the abuse was on-going Leiutenant Reedy arrived. He asked: "what the fuck is going on?!" Brewagner answered: "This fucking A-rab don't like women! he tried to head-butt Lilian!" Reedy ordered: "Take him to the dry-room!" They lifted Bakhtiari, using way more than the minimal force, and took him to a dry-room to be chained and tortured further.

43. The defendants, Reedy included this time, applied same abusive, sadistic and excessive force upon Bakhtiari in the dry-room, both on and off camera. They chained Bakhtiari's waist to his cuffs, and chained his legs. Then they laid Bakhtiari on the concrete floor gasping for air.

44. After 15 minutes, Reedy and two other individuals came back. Reedy said: "So, you like to say **Death to America**?!" Bahktiari answered: "I'd never say such a thing. I'm a Christian, and I'm married to an American, I have American children. I'd never say or wish such thing!" Reedy retorted: "Well! I've heard you people say Death to America all the time!" Then Reedy proceeded to say: "I'm back here to put your cuffs on *properly*. We have to *redo* your chain and your hand-cuffs!"

45. Reedy, with the help of the others, tried to pull on the chain around Bakhtiari's waist, **extremely tight**. At some point, in the process of pulling the chain around Bakhtiari's waist, Reedy placed his boots on Bakhtiari's back and began pulling the chain. The chain was also connecting his wrist-cuffs to his waist. The chain began pulling the hand-cuffs into Bakhtiari's flesh around his wrists. The chain began cutting into his waist. The entire ensemble, chains and cuffs, began kniving into Bakhtiari's flesh. Bakhtiari told Reedy: "These are cutting into my flesh, they are about to make my arms and hands go numb!" Reedy answered: "Good!"

46. Then Reedy left the cell and while leaving he yelled: "You can shout Death to America as long as you want to!" A few minutes after Reedy had eft, Martin came back to the dry-cell window and said: "Dude, why would you people say Fuck America!?" Bakhtiari pleaded back: "As I've said before, I'm a Christian, I've american loved ones. I'd

never wish ill or death on anyone. Please! These cuffs and chains are cutting into my flesh and I'm bleeding from my wrists. Please! you need to stop this torture!" Martin ignored and left.

47. Afterwards, reedy came back with a photo-camera and aimed it at Bakhtiari's face. He ordered Bakhtiari to smile for the camera. Bakhtiari stated: "You want me to smile? I'm bleeding at wrists and under this chain! smile for you?" Reedy responded: "You better obey orders, don't tempt me for another round!" Bakhtiari perceived the threat and got the message. He did not want another round of abuse. Bakhtiari, in pain and at the mercy of Reedy at the time, under the force and threat, obeyed and smiled for the Reedy's photo camera.

48. In the following hours, Leiutenant John Doe-3, Sterner, Reedy, Martin, Maize, Galloza and others all saw clearly that Bakhtiari was bleeding under the chain, and under the hand-cuffs around his both wrists. They all deliberately ignored Bakhtiri's pleas. Some of the staff, such as officer Sterner, answered that they were following direct explicit orders from Reedy and Galloza and could not touch Bakhtiari's cuffs and chains.

49. Bakhtiaro under-went the torture from January .9th—2016 (noon) until 7 AM of the next day (at least 18 hours). In the morning, about 7 AM, Reedy and John Doe-4 (both lieutenants) came back to the cell. They opened the chains and cuffs and observed the bleeding. They pretended they did not see anything out of the ordinary. Bakhtiari asked for medical care. They told Bakhtiari that if he needs medical attention he can talk about it to his next prison after transfer.

50. While still in the dry-room, Reedy told Bakhtiari: "I'm sending your ass back to your favorite cell, Z02-05, with you buddy Champaign!" Bakhtiari begged him again: "I'm at mercy and your custody. There are at least 50 empty cells in this SHU. Why there? you cannot do this to me. This time around Champaign will send me to the hospital!" Reedy responded: "You have to cohabitate with him! I don't care, a Nazi, a white-supremacist or whatever! you gotta cohabitate together!" Bakhtiari pleaded some more: "Champaign is going through some medical or medicinal complexity. He is promising me that he will kill me. He is openly a Nazi, has a swastika tattoo that he swears by all the time! please do not do this!" Reedy would not hear of it. He and John Doe-4 and another officer

walked Bakhtiari back to cell Z02-05, Champaign was sleeping. The third officer reminded Reedy: "cell 12 in the corner is empty! (Z02-12) want him go in there?" Reedy responded: "No! with Champaign is fine! They will cohabitate." then Reedy grinned and made jokes about being rejectees and about Death to America again.

51. They walked Bakhtiari to Champaign's cell. As soon as Champaign saw Bakhtiari he began screaming and cursing: "I don wan this nigger here, I'll kill him, I'll fuck him up! I swear!" Reedy ignored his comments, pushed Bakhtiari there in the cell and left with his colleagues.

52. As soon as Reedy walked away, Champaign turned around and **punched** Bakhtiari in the face. His knuckles penetrated Bakhtiari's right brow and Bakhtiari began bleeding from the right brow. Champaign continued punching Bakhtiari in the head and face. Bakhtiari had just          through 18 hours of torture in the hands of the officers. Bakhtiari could not even put up him arms in defense, or he could barely do so. Champaign went on punching, and calling Bakhtiari a nigger, a terrorist and other slurs. After Champaign became tired, he went back to sleep.

53. Bakhtiari slept on the upper bunk. He skipped breakfast, lunch and dinner to avoid agitating or inciting Champaign. Champaign did not talk to or punch Bakhtiari the rest of the day.

54. The next day, by morning, officer Slukom came and informed Bakhtiari that he was being transferred to the corner cell (Z02-12). Slukom told Bakhtiari: "Pack your mattress and things! You are going to the corner cell with a new cellie!" Then Slukom left to allow Bakhtiari time to pack.

55. It is **_note-worthy_**, that the same cell was available the previous day. But Reedy's calculated plan was to place Bakhtiari in the cell with Champaign to allow Champaign an opportunity to assault and batter Bakhtiari. Reedy and his staff tortured and physically abused Bakhtiari for 18 hours, then passed on the torch to Champaign to continue their torture.

56. Bakhtiari climbed down the ladder to pack. After Bakhtiari was done packing, Champaign got off his bed and stated: "Well! Lozano asked me for this favor when I came here, I better deliver!" Then he began punching Bakhtiari in the head.

57. It is *note-worthy* that Champaign had spent few months outside prison, on supervised release prior to returning prison to FCI-Allenwood for violating supervisory release terms. For the few months outside prison Champaign had consumed a great amount of steroids and had practiced boxing. Bakhtiari was no match for Champaign even without the 18 hours of torture preceding the event.

58. During the morning beating session, Bakhtiari was able to lift his arms to guard his face and head. When Champaign heard the keys, a sign that Sluokm was coming, he stopped punching. Slukom opened the door. Slukom saw the broken right-brow and bruised right-eye, but he ignored and said nothing. Slukom walked Bakhtiari to cell Z02-12 (corner cell).

59. From the day after January—9th— 2016, when Champaign and Bakhtiari were separated, until March 2016, Bakhtiari was still in FCI Allenwood SHU. On daily basis, Bakhtiari begged Lozano, Martin, Felton, Slukom, Hause, John Does (all three), Spaulding, Galloza, Reedy and the nurse staff who visited the SHU regularly, for medical attention for his wounds. The defendants, in a rehearsed fashion would answer: "Talk about it to your next prison, you are being transferred soon!"

60. On or about **February 3rd 2016** Bakhtiari appeared before Bittenbender who was sitting as Disciplinary Hearing Adjudicating Officer (Incident  **No. 2802858**). Galloza, in an attempt of a ruse, had alleged that Bakhtiari had attempted to assault her. Bittenbender was to adjudicate Galloza's claim. Bittenbender, began the hearing by protesting tat apparently, Bakhtiari had called him and his wife (or former wife) "rejectees". Bittenbender went on bitterly protesting that Bakhtiari was condescending to him and the staff. Bakhtiari asked Bittenbender to withdraw as the adjudicator due to his lack of objectivity. Bittenbender refused to withdraw.

61. Bittenbender blatantly ignored the premises of disciplinary hearing for inmates as set out in *Wolff v. McDonnel* by the Supreme Court. He refused to allow witnesses or written testimony. Bakhtiari requested presence of witnesses. Bittenbender refused to allow any of such witnesses or evidentiary defense by Bakhtiari. Bittenbender disallowed 80 days of good time credit, on the basis of the hearing which he conducted with such extreme bias. Bittenbender disallowed 80 days of good time credit, on the basis of the hearing which he

conducted with such extreme bias. The Regional Office and the Central Office of BOP, both failed to address Bakhtiari's appeals from Bittenbender's decisions, actions and omissions.

62. While violating all tenets of due process, and the premises of *Wolff v. McDonnel*, and while conducting the hearings with extreme prejudice and bias, Bittenbender disallowed a total of 160 days (almost the entire GTC accumulated by Bakhtiari through out his sentence in federal custody).

## COUNT 1 (ONE)
FOIA
### Freedom of Information Act

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**

**MIHCAEL TAFLESKI, SARAH QUREISHI, STEVEN SPAULDING**

2. Plaintiff made FOIA requests to the general counsel of BOP ("Qureishi"), to Warden Spaulding and to counsel Michael Tafleski. All three had the ability and the obligation to provide FOIA disclosures.

3. These defendants witheld the information and malicisouly refused to make the disclosure as mandated by the federal statute.

4. These requests were within the parameters of the statute (FOIA). Bakhtiari also wrote to the counsel involved about the defendants failure to comply with the statutes to make disclosure. The counsel ignored Bakhtiari's notice.

5. The federal agency - Bureau of Prisons ("BOP") is in care, control and custody of the records requested.These records are not FOIA exempt and fall within the purveiw of the statute for disclosure. The actions of the said defendants and their failure to disclose are malicious and abusive. They have corruptly witheld the record.

6. As a result plaintiff has been harmed.

## COUNT 2 (TWO)
### FTCA-PENNSYLVANIA LAW, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**
Bittenbender, Brewagoner , Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton, John Doe-1, Doe-2, Doe-3 and Doe-4
**AND THE UNITED STATES**

2. The above conduct as enumerated in the factual background is extreme and outrageous, it shocks the conscience of any civilized human being, any average American, or anyone with the minimal of conscience.

3. The above enumerated conduct: the beating, assault and battery, the extreme torture in the dryroom by cuffing and chaining so it would lacerate the flesh and leave marks for a full year on Bakhtiari's body, ignoring his cries for help and medical care, and eventually inflicting severe bodily and phsychological harms, are extreme. The named defendants committed as such intentionally, knowingly, sadisticaly and maliciosuly and the least, was done recklessly.

4. The emotional and psychological wounds caused are endless and severe and Bakhtiari will forever suffer from the trauma and emotional wounds caused by the defendants.

## COUNT 3 (THREE)
### FTCA-PENNSYLVANIA LAW, CIVIL CONSPIRACY

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**

**ALL DEFENDANTS**

**2.** The defendants in this suit, all, each and every one involved personally, acted toward the common purpose of tormenting, torturing and abusing Bakhtiari, and toward violating his rights under the law. They acted toward the unlawful common purpose of violating Bakhtiari's rights.

3. Bakhtiari, plaintiff, has alleged many overt-acts supra, which the above named defendants commited in pursuit of their common unlawful purpose.

4. Plaintiff suffers from actual, substantive and substantial harms as a result of the said conspiracy, which was formed from the onset to violate plaintiff's civil rights.

## COUNT 4 (FOUR)
### FTCA-PENNSYLVANIA LAW, ASSAULT

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**

FELTON, MARTIN, REEDY, MAIZE, GALLOZA, JOHN DOE-1, DOE-2, DOE-3, DOE-4 BREWAGONER AND THE UNITED STATES

2. The above defendants intentionally caused an imminent apprehension of a harmful and offensive bodily contact and harm in Bakhtiari.

3. Their actions were intentional attempts by force to do injuries to the person of plaintiff.

4. The actions of the above named defendants caused severe, substantive and substantial injuries.

4. The above defendants' conducts, in assaulting Bakhtiari in the corridor of Z02 in the SHU and battering him there in the eyes of cameras, in forcefully and abusively dragging him down the stairs to a holding cell, in physically and sadistically beating Bakhtiari in the holding cell off and on camera, in sitting in his chest untill he could not breath, and making jokes about water-boarding him while he was gasping for air was assaultive and battery. Their conduct went one inside the dry cell, when they battered him while they were placing shackles on his feet, wrists and waist. For example, Lieutenant Reedy, off camera, placed his boot on the chain, which was fixed around Bakhtiari's waist and pulled on it, until the handcuffs and the chain began cutting into Bakhtiari's flesh, wrists and waist. When Bakhtiari complained Reedy responded: "Oh! Good!" Reedy even ignored blood coming out of the lacerations and made racial and hostile comments about "Folks in Iran shouting Death to America!" All the conduct alleged herein and in the body of factual background are--assultive, battering and inhumane. Are done intentionaly to create physical harm and pain and indeed, they did the intended harm upon Bakhtiari's body. The marks from these injuries are still on Bakhtiari's body. by January of 2017.

## COUNT 5 (FIVE)
### FTCA-PENNSYLVANIA LAW, BATTERY

1. Plaintiff. respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**

**FELTON, MARTIN, REEDY, MAIZE, GALLOZA, JOHN DOE-1, DOE-2, DOE-3, DOE-4 BREWAGONER**
**AND THE UNITED STATES**

2. The above named defendants intended to cause harmful and offensive contacts to plaintiff Bakhtiari. They, each and every one, inflicted such contacts. The above named defendants at first assaulted plaintiff, then the violence which they assaultively menaced upon him, they actually delivered.

3. The amount of force which they used was not meant for order or penological purposes, it was meant for malicious and sadistical abuse, out of hatred, out of racial hatred and retaliatory animus.

4. The above defendants' conducts, in assaulting Bakhtiari in the corridor of Z02 in the SHU and battering him there in the eyes of cameras, in forcefully and abusively dragging him down the stairs to a holding cell, in physically and sadistically beating Bakhtiari in the holding cell off and on camera, in sitting in his chest untill he could not breath, and making jokes about water-boarding him while he was gasping for air was assaultive and battery. Their conduct went one inside the dry cell, when they battered him while they were placing shackles on his feet, wrists and waist. For example, Lieutenant Reedy, off camera, placed his boot on the chain, which was fixed around Bakhtiari's waist and pulled on it, until the handcuffs and the chain began cutting into Bakhtiari's flesh, wrists and waist.When Bakhtiari complained Reedy responded: "Oh! Good!" Reedy even ignored blood coming out of the lacerations and made racial and hostile comments about "Folks in Iran shouting Death to America!". All this conduct alleged herein and in the body of factual background are assaultive, battering and inhumane. Are done intentionaly to create physical harm and pain and indeed, they did the intended harm upon Bakhtiari's body. The marks from these injuries are still on Bakhtiari's body, by January of 2017.

## COUNT 6 (SIX)
### FTCA-PENNSYLVANIA LAW, NEGLIGENCE
**GENERAL NEGLIGENCE**

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**

Bittenbender, Brewagoner , Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Taflcski, Slokum, Galloza, Maize, Felton and the United States

2. The above named defendants had a duty to perform the duties mandated upon them by the Codes of Federal Regulation, by statutes and the BOP program statements.

3. The defendants woefuly failed to conform to these duties and obligations.

4. Bakhtiari suffers from substantive, severe and substantial injuries which were directly and explicitly caused by the failure of the above named defendants to conform to their obligations.

5. The above named defendants saw that their colleagues were planning, plotting and executing their evil plans to harm Bakhtiari, they had an obligation under the explicit written law or program statements to intervene, they neglected to do so. They saw explicit and actual need for medical care, they again deliberately ignored and acted ignorantly and negligently. There was explicit and clear guideline and policy in place for cuffing, chaining, transfering inmate, placing inmates in the SHU with specific roommates, addressing inmate complaint, addressing their requests to process administrative remedies in the SHU and pertaining to each and every failure Bakhtiari has alleged in the body of his complaint. The defendants, all of them and each and every one of them, acted negligently.

## COUNT 7 (SEVEN)
FTCA-PENNSYLVANIA LAW, BOP PROGRAM STATEMENTS, PRACTICES AND
POLICIES -- NEGLIGENCE--SPECIAL RELATIONSHIP

1. Plaintiff  respectfully re-incorporates the factual background as alleged in
paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common
To All Counts."

**This Count Specifically Asserted Against Defendants:**
Bittenbender, Brewagoner , Hause, Lozano, Trithol, Spaulding, Reedy, Martin,
Tafleski, Slokum, Galloza, Maize, Felton and the United States

2. The above named defendants had a duty to perform the duties mandated upon them
by the Codes of Federal Regulation, by statutes and the BOP program statements.

3. The defendants woefuly failed to conform to these duties and obligations.

4. Bakhtiari suffers from substantive, severe and substantial injuries which were
directly and explicitly caused by the failure of the above named defendants to
conform to their obligations.

5. The above named defendants saw that their colleagues were planning, plotting and
executing their evil plans to harm Bakhtiari, they had an obligation under the
explicit written law or program statements to intervene, they neglected to do so.
They saw explicit and actual need for medical care, they again deliberately ignored
and acted ignorantly. and negligently. There was explicit and clear guideline and
policy in place for cuffing, chaining, transfering inmate, placing inmates in the SHU
with specific roommates, addressing inmate complaint, addressing their requests to
process administrative remedies in the SHU and pertaining to each and every failure
Bakhtiari has alleged in the body of his complaint. The defendants, all of them
and each and every one of them, acted negligently.

## COUNT 8 (EIGHT)
### 42 U.S.C. § 1985(2), CIVIL CONSPIRACY, FEDERAL LAW

1. Plaintiff  respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**

**ALL DEFENDANTS**

2. Knowingly, with full calculation and intent, by conspiratorial participation, by planning and execution, the defendants in this suit participated in actions which fully is defined under the federal conspiracy law. These defendants in small groups or in large, met, conspired, planned toward common goals and objectives anytime, before and after meeting with Bakhtiari.

3. The main goal of the conspiracy was evil, harmful and it was to deter Bakhtiari from reaching the courts and the justice system.

4. The said conspiracy and conspiratorial acts harmed Bakhtiari extensively, substantially and permanently.

## COUNT 9 (NINE)

42 U.S.C. § 1985(3), CIVIL CONSPIRACY, FEDERAL LAW

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**

**ALL DEFENDANTS**

2. Knowingly, with full calculation and intent, by conspiratorial participation, by planning and execution, the defendants in this suit participated in actions which fully is defined under the federal conspiracy law. These defendants in small groups or in large, met, conspired, planned toward common goals and objectives anytime, before and after meeting with Bakhtiari.

3. The main goal of the conspiracy was evil, harmful and it was to deter Bakhtiari from reaching the courts and the justice system.

4. The said conspiracy and conspiratorial acts harmed Bakhtiari extensively, substantially and permanently.

## COUNT 10 (TEN)
### 42 U.S.C. § 1986, CIVIL CONSPIRACY, FEDERAL LAW

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

### This Count Specifically Asserted Against Defendants:
### ALL DEFENDANTS

2. Knowingly, with full calculation and intent, by conspiratorial participation, by planning and execution, the defendants in this suit participated in actions which fully is defined under the federal conspiracy law. These defendants in small groups or in large, met, conspired, planned toward common goals and objectives anytime, before and after meeting with Bakhtiari.

3. The main goal of the conspiracy was evil, harmful and it was to deter Bakhtiari from reaching the courts and the justice system.

4. The said conspiracy and conspiratorial acts harmed Bakhtiari extensively, substantially and permanently.

5. Defendants each and everyone, had a duty to stop others, deter them from devoting time and energy to the conspiracy and to the common goals pursued by them: harming Bakhtiari and depriving his rights. They all participated and contributed, they had the duty to stop the conspiracy, report it and deter it. But they failed to effectuate this moral and legal obligation.

## COUNT 11 (ELEVEN)
### BIVENS- 8TH AMENDMENT- DELIBERATE INDIFFERENCE

1. Plaintiff  respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**

**Bittenbender, Brewagoner , Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton**

2. Plaintiff had an objectively serious medical need: injuries from the beatings of the staff and those of Champaign, and also the injuries arising out of the lack of his medicine which was initially withheld.

3. The above defendants were deliberately indifferent, and at times, indifferent out of hostility and spite. Bakhtiari brought to their attention the need for medical attention, numerous times, at times Bakhtiari pleaded with them.

4. The indifference of these individuals was reckless, wanton and inhumane. By thier deliberate  indifference,  they caused further harms.

5. These defendants knew help was needed, by they idly sat by. At times these individuals watched and sadistically enjoyed. The record is full of such animalistic behavior from these defendants.

6. Had these defendants lifted a finger , the extent of injuries would not be as much.

7. Deliberate indifference on the part of these defendants caused substantial, extensive and permanent harms.

## COUNT 12 (TWELVE)
### BIVENS- 8TH AMENDMENT- EXCESSIVE FORCE

1. Plaintiff  respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

### This Count Specifically Asserted Against Defendants:

FELTON, MARTIN, REEDY, MAIZE, GALLOZA,
ALL FOUR JOHN DOES (1,2,3, AND 4)
BREWAGONER

2. The above named defendants, each and every one, knew that they had to use minimal, de minimus force, only for penological  purposes, sparingly, with utmost amount of care. Discretion had no  place in this since the BOP program statements and Codes of Federal Regulation calibrated the required conduct. But the above defendants, each and every one, violated such cardinal rule in Bakhtiari's case and used force excessively, unecessarily for sadistic, malicious and hostile purposes only. The purpose of so much hate, harm and force was to inflict pain upon Bakhtiari.

3. The amount of force, objectively, was excessive and out of proportion with reason and looking at the above incidents subectively, the defendants' state of mind was purely culpable and sadistic. They were hellbent to harm, for retaliatory, racially hateful and discriminatory purposes.

4. In beating Bakhtiari in the corridors, in the dry cell, in the holding cell, in cutting his felsh with excessively tightened cuffs and chains, the above named defendants utilized excessive force to abuse Bakhtiari  for their sadistical and malicious purposes.

5. Bakhtiari suffers eternal, severe, substantive and substantial physical and psychological harms as a result of the above cited use of excessive force.

**COUNT 13 (THIRTEEN)**
BIVENS- 8TH AMENDMENT- FAILURE TO PROTECT

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

> **This Count Specifically Asserted Against Defendants:**
> FELTON, MARTIN, REEDY, MAIZE, GALLOZA,
> ALL FOUR JOHN DOES (1,2,3, AND 4)
> BREWAGONER

2. The above named defendants, each and every one, knew that they had to use minimal, de minimus force, only for penological purposes, sparingly, with utmost amount of care. Discretion had no place in this since the BOP program statements and Codes of Federal Regulation calibrated the required conduct. But the above defendants, each and every one, violated such cardinal rule in Bakhtiari's case and used force excessively, unecessarily for sadistic, malicious and hostile purposes only. The purpose of so much hate, harm and force was to inflict pain upon Bakhtiari.

3. The amount of force, objectively, was excessive and out of proportion with reason and looking at the above incidents subectively, the defendants' state of mind was purely culpable and sadistic. They were hellbent to harm, for retaliatory, racially hateful and discriminatory purposes.

4. In beating Bakhtiari in the corridors, in the dry cell, in the holding cell, in cutting his felsh with excessively tightened cuffs and chains, the above named defendants utilized excessive force to abuse Bakhtiari for their sadistical and malicious purposes.

5. Bakhtiari suffers eternal, severe, substantive and substantial physical and psychological harms as a result of the above cited use of excessive force.

6. The officials have a duty to protect, intefer and stop their colleagues when they see the colleagues,other officers are utilizing excessive force. In this case, the contributed and at times simply watched the show and enjoyed. From the onset it was a conspircy. The group of defendants named in this suit, in this count and count 12, gathered and planned on creating an "A-rab beating" show. The defendants in this case, each and every one, had a duty to stop each other from proceedings, but failed to do so, since they intentionally enjoyed the show and agreed with the abusive intents of the plan.

7. The same applies to the intentional act of the above defendants in feeding Bakhtiari, forcefully to the cell of Chavez Champaign and instructing him to beat Bakhtiari, and doing so in spite of Bakhtiari's pleas to protect him against Champaign,

## COUNT 14 (FOURTEEN)

BIVENS- or 42 U.S.C. § 1983 -- GOVERNMENT OR STATE CREATED DANGER

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against:**
**REEDY AND GALLOZA**

(for placing Bakhtiari intentionally within the cage of Champaign, and for abusive shakling)

2. The above defendants, knowingly and intentionally created danger for Bakhtiari to be harmed and injured in the hands of Champaign, and in the hands of their fellow officers.

3. Bakhtiari pleaded to them to protect him against Champaign, but they intentionally placed Bakhtiari in his cell and instructed him to physically abuse Bakhtiari.

4. The above officials saw and knew that their colleagues were to injure Bakhtiari, but they proceeded by their plans to let their colleagues injure Bakhtiari.

5. Bakhtiari suffers from severe, substantive and substantial harms caused by the actions, commissions and omissions of the defendants.

6. The defendants clearly saw the harm forth-coming.

7. The above defendants, all governmental officials, acted knowingly, with willful disregard for Bakhtiari's safety.

8. The government officials, the defendants herein, were in care, control and custody of Bakhtiari. They were in charge of Bakhtiari, to protect him since he could not as an inmate protect himself.

9. Knowingly, with claculated intent and design, these governmetn officials created opportunity for danger, harm and injury to befall Bakhtiari. The opportunity for Champaign or the above officers to harm Bakhtiari would not have existed, unless when the defendants created the danger and the opportuntiy for harm.

## COUNT 15 (FIFTEEN)
### BIVENS- FIRST AMENDMENT- FREE SPEECH -RETALIATION

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**
**Bittenbender, Brewagoner , Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton**

2. In 1994, Bakhtiari converted to Christianity in Iran. He was disowned by his own family and friends. He left Iran and began living in the US in exile. When the Iranian people shout "Death to America!" that is as harmful to Bakhtiari, who is married to an American and has American children, as harmful to any other American. But those ignorant people shouting such idiocity is not harmful to Americans at all. This is the land, the United States, which allows burning American flag on the Pennsylvania Avenue right infront of the White House.

3. The endless harms  which the defendants inflicted upon Bakhtiari was for protected speech, for Bakhtiari making the comment about the staff of BOP being"rejected by all other law enforcement agencies" and for the slogans of the ignorant people of Iran, who gather every Friday to the center of their towns to shout Death to America before and after their Friday prayers.

4. Was it not for his race, nationality, and not for his "rejectees" comment, the defendants in this suit would not have tortured Bakhtiari and would not have inflicted the severe substantive and substantial injuries upon Bakhtiari.

5. Making protected speech in America is a right, it is not a crime. But not even a crime should be punished the way inhumanely Bakhtiari has been tortured.

6. The purpose of the above actions, commissions and omissions was to punish, chill and hinder Bakhtiari's free speech. The actions, commissions and omissions had no valid cause, they did not serve any penological, correctional or safety causes.

## COUNT 16 (SIXTEEN)
### BIVENS- FIRST AMENDMENT- ACCESS TO COURTS AND GRIEVANCE PROCEEDINGS

1. Plaintiff  respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**
**Bittenbender, Brewagoner , Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton**
**Attorneys From Prison Litigation Unit-Defendants: Blewitt, Thiel, Hoffman, Mershimer, Consiglio**

2. First Amendment to the Constitution creates a right for Bakhtiari to be able to have access to courts, preserve evidence, pursue the administrative remedies to preserve his claims and do other legitimate things to bring his claims before a tribunal. Even while Bakhtiari was an inmate in custody of the above named defendants he had such constitutional right-access to courts and to evidence, to preserving evidence, to mailing and correspondence.

3. Bakhtiari has and had non-frivolous and meritorious claims, which needed to be presented in the form of adminstrative remedies, or in the form of claims before courts.

4. The above named defendants, each and every one, by their affirmative misconducts, interfered and hindered Bakhtiari's efforts to reach the courts, the administrative remedies adjudicators, to preserve evidence, make copies, keep copies, obtain proper forms to exhaust administrative remedies, or even to be able to mail things out of the institution from the SHU so he could exhaust or reach the ccurt.

5. In all the above forms of misconduct, the above named defendants quenched and hindered Bakhtiari's access to courts or his access--to-- judicial process as allowed by the constitution.

6. Bakhtiari's claims and administrative remedies and his ability to preserve evidence has been compromised substantially. Bakhtiari suffers from severe, substantive and substantial claims, which now cannot be properly addressed since the above defendants ignored his constitutional rights in access to courts and judiciary and those in accessing the administrative remedy process and preserving evidence.

## COUNT 17 (SEVENTEEN)
### BIVENS- FIFTH AMENDMENT- ACCESS TO COURTS AND GRIEVANCE PROCEEDINGS

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

This Count Specifically Asserted Against Defendants:
Bittenbender, Brewagoner , Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton and
Attorneys From Prison Litigation Unit-Defendants: Blewitt, Thiel, Hoffman, Hershimer, Consiglio

2. Fifth Amendment to the Constitution creates a right for Bakhtiari to be able to have access to courts, preserve evidence, pursue the administrative remedies to preserve his claims and do other legitimate things to bring his claims before a tribunal. Even while Bakhtiari was an inmate in custody of the above named defendants he had such constitutional right-access to courts and to evidence, to preserving evidence, to mailing and correspondence.

3. Bakhtiari has and had non-frivolous and meritorious claims, which needed to be presented in the form of adminstrative remedies, or in the form of claims before courts.

4. The above named defendants, each and every one, by their affirmative misconducts, interfered and hindered Bakhtiari's efforts to reach the courts, the administrative remedies adjudicators, to preserve evidence, make copies, keep copies, obtain proper forms to exhaust administrative remedies, or even to be able to mail things out of the institution from the SHU so he could exhaust or reach the court.

5. In all the above forms of misconduct, the above named defendants quenched and hindered Bakhtiari's access to courts or his access--to-- judicial process as allowed by the constitution.

6. Bakhtiari's claims and administrative remedies and his ability to preserve evidence has been compromised substantially. Bakhtiari suffers from severe, substantive and substantial claims, which now cannot be properly addressed since the above defendants ignored his constitutional rights in access to courts and judiciary and those in accessing the administrative remedy process and preserving evidence.

## COUNT 18 (EIGHTEEN)
BIVENS- FIFTH AMENDMENT- EQUAL PROTECTION CLAUSE

1. Plaintiff  respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**
**ALL DEFENDANTS**

2.  Was Bakhtiari not a "camel jockie and a sand nigger!" (using Lieutenant Hause's exact language) he would not have been treated in the fashion the defendants treated him. But not even an animal, not even a camel, let alone the "camel jockie" deserves to be dehumanized the way the defendants dehumanized Bakhtiari.

3. Bakhtiari's claim in "Equal Protection" is not a conclusory statement. The evidence clearly shows that Chavez Champaign, the white American who happened to be a white-supremacist, worshipping his swastika, was not treated the way Bakhtiari was abused. The exact opposite, he was instructed to beat and abusive Bakhtiari and he followed the instructions. In fact, he became a colleague to the abusive officers in this case.

4. The constitutional and lawful protection that other races have been granted by the above defendants, were denied Bakhtiari, due to his race, nationality and ethnicity.

5. There were no rationale, or valid cause for the actions, omissions and commissions of the defendants in this suite,the way they tormented and tortured Bakhtiari and igonred the rights which the law had conferred upon Bakhtiari.

6. As a result of this distinguished and differentiated treatment of Bakhtiari, he suffers from sever, substantive and substantial injuries.

## COUNT 19 (NINETEEN)
BIVENS- FIFTH AMENDMENT- DUE PROCESS CLAUSE-INMATE
DISCIPLINARY HEARINGS

1. Plaintiff respectfully re-incorporates the factual background as alleged in paragraphs 1 to 62 at the onset of the foregoing, under the heading "Facts Common To All Counts."

**This Count Specifically Asserted Against Defendants:**
**Bittenbender, Tafleski, Qureishi, Blewitt, Thiel, Hoffman, Mershimer, Consiglio**


2. The program statements of BOP, the due process clause of the Fifth Amendment, and the deicsion of the Supreme Court under Wolf v. McDonnell create and explain rights for Bakhtiari, as an inmate who was accused of infraction in prison context.

3. In disciplinary hearings before an independent arbiter, which Bittenbender shown to be the furthest thing from, Bakhtiari is promised tenets of skeletals of due process: introduction of witnesses, aducing evidence, review of electronic and video footage from security camera, notice, hearing and all presented before an independent arbiter who has no prejudice. In both of the disciplinary hearings which Bakhtiari had (No. 2785307 and No. 2802858 ) all the above tenets were ignored and violated.

4. Bakhtiari served a sentence of 51 months in federal custody. From 51 months, Bakhtiari receives about 6 months of good time credit. Bittenbender, without due process of law removed and disallowed a total of 160 days for both frivolous allegations which the other defendants made.

5. Bakhtiari asked for Bittenbender to withdraw, he refused, Bakhtiari asked for permission to introduce witnesses, evidence, written memoranda, audio/video recording from security footage and Bittenbender refused. None of the above basic protections enumerated by Wolf v. McDonnell were given to Bakhtiari in either of the above two hearings.

6. Bakhtiari had to serve an extra 160 days in prison, under the inhumane conditions which defendants had created. He suffered severe substative and substantial harms due to Bittenbender and other defendant's racial and retalitory animus.

## CONCLUSION

Bakhtiari, respectfully prays for:

a) Trial by a jury;

b) A finding of this Honorable Court for plaintiff;

c) Damages assessed by the jury for the above-numerated injuries;

d) Advisory finding of a jury for liabilities under FTCA

and respectfully prays for a jury assessment of the following against the defendants:

1) sum of 50,000 USD ($) for actual damages;

2) sum of 400,000 USD ($) for punitive damages;
(considering 20 individuals)assessed against each and every individual defendant

3) sum of 20,000,000 USD ($) for actual damages;against the United States;

4) sum of 80,000,000 USD ($) for punitive damages;against the United States;
assessing total of 100,000,000 USD ($) against the United States

In final total sum, assessing **1,000,000,000 USD ($)** against all defendants in aggregate.

5) and for any and all other relief deemed just and proper under the circumstances.

## VERIFICATION

I, plaintiff in pro se, certify and verify that the facts asserted in my petition (foregoing) and the facts asserted in the "Declaration of Facts" in enclosure, are all true, accurate and precise to the best of my memory, knowledge and belief.

_____
ALIREZA BAKHTIARI

**RESPECTFULLY SUBMITTED**
**ON THIS DECEMBER 29TH 2016**

**SIMULTANEOUS FIINGS**

- Declaration of Facts - Exhaustion Issues
- Motion to Proceed In Forma Pauperis
- Motion for Praecipe and Service of Process



CERTIFIED MAIL

ALIREZA BAKHTIARI
REG. NO. 39383-044
FEDERAL CORRECTIONAL INSTITUTE, MCKEAN
PO BOX 8000-39383044
BRADFORD, PENNSYLVANIA 16701
THE UNITED STATES OF AMERICA

7000 0600 0024 3319 9705

RECEIVED
SCRANTON

JAN 04 2017

PER_____DEPUTY CLERK

39383-0
Unit
US
Cle
Sc
Ur

CLERK OF TI
UNITED STAT
PO BOX 114
SCRANTON, P
Scranton,