# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALIREZA BAKHTIARI,** | : | |
| **Plaintiff** | : | **No. 1:17-CV-00016** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **STEVEN SPAULDING, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a civil action initiated upon the filing of a complaint in this matter on January 4, 2017, by <u>pro</u> <u>se</u> prisoner Plaintiff Alireza Bakhtiari ("Bakhtiari"), seeking to recover monetary damages against a total of twenty-one (21) Defendants under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 <u>et</u> <u>seq.</u>, <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1977), 42 U.S.C. § 1985, 42 U.S.C. § 1986, and the Freedom of Information Act ("FOIA"). The Court has conducted a screening review of the complaint in accordance with 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2). For the reasons that follow, the Court will dismiss Plaintiff's complaint in part and permit Plaintiff the opportunity to file an amended complaint.

## I.    <u>BACKGROUND</u>

On January 4, 2017, Bakhtiari, a federal inmate currently confined at the York County Prison located in York, Pennsylvania, filed a 19-count, 47-page complaint under 28 U.S.C. § 1331, asserting federal and state law claims against 21 Defendants named in their individual and official capacities, including: 13 prison officials employed at the Federal Correctional Institution at Allenwood, Pennsylvania ("FCI-Allenwood"); 5 Middle District of Pennsylvania Assistant United States Attorneys ("AUSA's"); 2 Bureau of Prison ("BOP") administrators; and the United States of America.[1]

The events forming the basis of Plaintiff's complaint occurred while Plaintiff was interned at FCI-Allenwood. The crux of Plaintiff's complaint concerns his cellmate assignment. Specifically, Plaintiff alleges that he was "brutalized, battered and physically and psychologically tortured" by FCI-Allenwood employees ("Allenwood Defendants"),[2] and by his assigned cellmate, Champaign (whom Plaintiff labels a white-supremacist), because of his Iranian nationality. (Doc. No. 1 at 12-13.) Bakhtiari claims that the Allenwood Defendants intentionally placed him in this cell in retaliation for comments he made about certain prison staff. (Id.) Specifically, Plaintiff alleges that the Allenwood Defendants instructed Champaign to torture him because of Plaintiff's nationality and as a result of having called the Allenwood Defendants "rejects." (Id.) Fearing for his life, Plaintiff alleges that he repeatedly pleaded with the

_____

[1]The full roster of Defendants is as follows: Steven Spaulding, Reedy, Hause, Lilian Galloza, Martin, Maize, Felton, Slokom, Bittenebender, Lozano, John Doe 1, John Doe 2, John Doe 3, Justin Blewitt, G. Theil, Joanne Hoffman, Kate Mershimer, Michael Consiglio, Michael Tafleski, Sarah Qureishi and the United States of America.

[2] The Court identifies the following as the Allenwood Defendants: Steven Spaulding, Reedy, Hause, Lilian Galloza, Martin, Maize, Felton, Slukom, Bittenebender, Lozano, John Doe-1, John Doe-2, and John Doe-3.

Allenwood Defendants to allow him to switch cells, but with no success. (Id. at 11-15.) The tension within the cell continued to escalate until January 9, 2016, when Plaintiff finally convinced Allenwood Defendants Martin and Felton to remove him from the cell and place him in a temporary holding cell. (Id. at 14.)

After examining him and finding no signs of physical marks or abuse, the Allenwood Defendants proceeded to introduce Plaintiff back into the cell with Champaign. However, Plaintiff, still hand-cuffed, began resisting their efforts to secure him in the cell out of fear that Champaign would assault him. (Id.) Plaintiff avers that the Allenwood Defendants responded to Plaintiff's resistance by throwing him to the concrete floor, breaking his glasses, and assaulting him. (Id. at 15.) Plaintiff alleges he was then taken to the "dry-room to be chained and tortured." (Id. at 16.)

According to Plaintiff, after spending at least 18 hours in the "dry-room," the Allenwood Defendants took him back to the cell with Champaign. (Id.) Plaintiff alleges that after the Allenwood Defendants placed him in the cell and walked away, Champaign punched Plaintiff in the face and continued to punch him in the head and face until Champaign "became tired." (Id. at 18.) That next morning, Allenwood Defendant Slokum came to Plaintiff's cell and informed him that he was being transferred to a different cell. (Id.) Plaintiff alleges that when he was finished packing, Champaign stated "Well[,] [Defendant] Lozano asked me for this favor when I came here, I better deliver[]" and then began punching Plaintiff again. (Id.) Plaintiff avers that despite the visible signs of blood, bruises and wounds on him, the Allenwood Defendants refused to provide him with necessary medical attention. (Id. at 19.)

In addition to Plaintiff's allegations relating to his cell assignment, Plaintiff also alleges that Allenwood Defendant Bittenbender, the disciplinary hearing adjudication officer, failed to afford him with impartial hearings on two occasions, resulting in the loss of a total of 160 days of good time credit from the two decisions.  (Id. at 12, 19.)  Plaintiff further contests the Regional and Central Office of the BOP's failure to address his appeals of those adjudications of his misconduct. (Id.; Doc. No. 1-2, Declaration of Facts at 1-5.)  Plaintiff alleges that because the Regional and Central Officer staff were "playing games and avoiding adjudication of [his] claims," he submitted his appeals to the Prison Litigation Unit, and specifically to the five AUSA's named as Defendants in the caption of the complaint, but did not receive any response from them.  (Doc. No. 1-2 at 3.) Finally, Plaintiff complains that FCI-Allenwood employees refused his numerous requests for his prescriptions while housed in the Special Housing Unit ("SHU").  (Doc. No. 1 at 10-11.)

Plaintiff sets forth a total of 19 causes of action against the above-named Defendants.  The matter is now before the Court pursuant to its statutory obligation under 28 U.S.C. §§ 1915A and (e)(2) to screen the complaint and dismiss it if it fails to state a claim upon which relief can be granted.[3]

## II.     STANDARD OF REVIEW

_____

[3] In addition to the complaint, Plaintiff has filed two motions for leave to proceed in forma pauperis (Doc. Nos. 2, 6), an authorization to have funds deducted from his prison account to pay the filing fee in installments (Doc. No. 7), and a motion for extension of time to file in forma pauperis material (Doc. No. 9).  Construing Plaintiff's motions to proceed in forma pauperis as a request to proceed without full prepayment of the filing fee, the Court will grant the same and deny Plaintiff's motion for an extension (Doc. No. 9), as moot.

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); James v. Pa. Dep't of Corr., 230 F. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought in forma pauperis. See 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mitchell, 696 F. Supp. 2d at 471.

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In conducting its screening review of a complaint, the court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

## III.    DISCUSSION

As set forth above, Plaintiff has asserted 19 causes of action. The Court will now address each ad seriatim.

### A.    FOIA CLAIM (COUNT 1)

Plaintiff asserts a FOIA claim against three individual Defendants: Tafleski, Qureishi and Spaulding. Plaintiff asserts that these Defendants withheld and refused to disclose information that Plaintiff requested. (Doc. No. 1 at 26.) While it is not entirely clear as to what information Plaintiff is alleging was unlawfully withheld, liberally construing the complaint and the attached "declaration of facts" (Doc. No. 1-2), it appears that Plaintiff argues that these Defendants did not respond to: (1) his request as to why he was placed in SHU at FCI-Allenwood; (2) his request to preserve evidence from the alleged incidents that took place while at FCI-Allenwood; and (3) his BP-9 and BP-10 grievance forms that he submitted directly to Tafleski and Spaulding. (Doc. No. 1-2 at 1, 2, 4.)

Plaintiff's FOIA claim fails for three reasons. First, Plaintiff cannot maintain a FOIA action against individually named defendants. FOIA creates disclosure obligations for federal agencies, but does not impose individual liability on government personnel. Kaplan v. Ebert, 648 F. App'x 177, 180 (3d Cir. 2016). Indeed, courts have consistently held that individual

governmental officials are not properly named as defendants in FOIA lawsuits. See, e.g., Nelson v. United States, Civ. No. 1:15-CV-1696, 2015 WL 6501243, at *4 (M.D. Pa. Oct. 27, 2015); Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006). Second, money damages—the relief Plaintiff seeks to recover in his complaint—are not available under FOIA. See Kaplan, 648 F. App'x at 180. Third, the complaint is of factual averments from which an inference could be drawn that Plaintiff submitted a proper FOIA request for "records." Rather, it appears that Plaintiff premises liability on allegations that Defendants failed to respond to his questions and provide him with a rationale or explanation of certain prison policies and procedures, which are not countenanced by the scope and reach of the FOIA. Jean-Pierre v. Fed. Bureau of Prisons, 880 F. Supp. 2d 95, 104 (D.D.C. 2012) (citations omitted); see also Thomas v. Comptroller of Currency, 684 F. Supp. 2d 29, 33 (D.D.C. 2010) ("To the extent that plaintiff's FOIA requests were questions or requests for explanations of policies or procedures, these are not proper FOIA requests requiring . . . [a] response.").

Since Defendants Tafleski, Qureishi, and Spaulding are not proper parties, Plaintiff's FOIA claim will be dismissed against them with prejudice. However, the Court will permit Plaintiff leave to amend his complaint to assert a cognizable FOIA claim against the proper institutional defendant. Plaintiff is reminded that should he choose to re-assert a FOIA claim and name the proper institutional defendant, he must set forth factual allegations that support his claim that Defendants failed to respond to his properly submitted FOIA requests.

B.     FTCA CLAIMS (COUNTS 2-7)

Next, in Counts 2 through 7, Plaintiff alleges violations of the FTCA.  Specifically, in Count 2, Plaintiff asserts a claim of intentional infliction of emotional distress against Defendants Bittenbender, Brewagoner, Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton, John Does 1-4, and the United States.  He alleges that these Defendants beat, assaulted and battered him, tortured him in the "dryroom" by cuffing and chaining him so tight that it lacerated his flesh, and ignored his cries for help and medical care.  (Doc. No. 1 at 22.) In Count 3 he alleges civil conspiracy against all named Defendants by acting in a common purpose to torture, abuse, and torment him.  (Id. at 23.)  In Counts 4 and 5 Plaintiff alleges assault and battery by Defendants Felton, Martin, Reedy, Maize, Galloza, John Does 1-4, Brewagoner, and the United States.  He alleges that these Defendants assaulted and battered him in the corridor of the SHU, dragged him down the stairs to a holding cell, beat him in the holding cell, sat on his chest, and with unnecessary force, chained and shackled him so tightly that the chain cut through his flesh.  (Id. at 24, 25.)  In Count 6, Plaintiff alleges negligence by Defendants Bittenbender, Brewagoner, Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton, and the United States.  Specifically, Plaintiff alleges that despite BOP program statements setting forth these Defendants' duties and obligations towards Plaintiff, Defendants failed to intervene to provide him with needed medical care and violated policies relating to cuffing, chaining, transfer, and placement of inmates.  (Id. at 26.)  At Count 7, Plaintiff asserts a "negligence – special relationship" claim against Defendants Bittenbender, Brewagoner, Huase, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton, and the

United States.  Plaintiff's allegations in this Count are identical to those set forth in Count 6.  (Id. at 27.)

### 1.  Proper Defendant

While the FTCA provides jurisdiction for suits against the United States for torts allegedly committed by federal officials, the United States is the only proper defendant in a case brought under the FTCA.  CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008); see also Thomas v. United States, 558 F. Supp. 2d 553, 557 (M.D. Pa. 2008) ("[T]he only proper party Defendant is the United States, and not individual employees of the BOP."); Boyd v. United States, 482 F. Supp. 1126, 1128 (W.D. Pa. 1980) ("Only the United States Government itself is amenable to suit under [the FTCA].  Employees and specific government agencies are not proper defendants.").  Accordingly, the Court will dismiss Counts 2-7 against all individually named Defendants with prejudice.  Thus, the only remaining Defendant in Counts 2-7 is the United States.

### 2.  Counts 2 through 7

Having determined the properly named Defendant in Counts 2-7, the Court addresses each Count in turn.

#### a.  Intentional Infliction of Emotional Distress (Count 2)

The Court looks to Pennsylvania law in assessing whether Plaintiff has alleged sufficient facts to support his claim for intentional infliction of emotional distress.  See Tronoski v. Murphy, No. 95-1093, 1995 WL 225312, at *2 (E.D. Pa. Apr. 17, 1995); Frank v. Smith, No. 9-CV-596, 2009 WL 5214978, at *4 (M.D. Pa. Dec. 29, 2009).  While the Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress, Taylor v.

Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000), the Pennsylvania appellate courts have recognized the tort.  Field v. Phila. Elec. Co., 565 A.2d 1170, 1183-84 (Pa. Super. 1989); Deitrick v. Costa, No. 6-CV-1556, 2015 WL 1606714, at *5 (M.D. Pa. Apr. 9, 2015). The Third Circuit, predicting that the Pennsylvania Supreme Court will ultimately recognize the tort, has allowed recovery for intentional infliction of emotional distress.  Williams v. Guzzardi, 875 F.2d 46 (3d Cir. 1989).

In Pennsylvania, to prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove that:

> defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress … Liability will be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . . . . Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" . . . . The extreme and outrageous character of conduct may arise from an abuse by a person in a position of actual or apparent authority over another, or by one with the power to affect the other's interests.

(Id.) (citations omitted).

Under this standard, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."  Daughen v. Fox, 539 A.2d 858, 861 (Pa. Super. 1988) (quoting Restatement of Torts (2d) § 46 Comment (d)).  Pennsylvania courts have held that "it is unwise and unnecessary to permit recovery to be predicated on an inference based on the

defendant's 'outrageousness' without expert medical confirmation that the plaintiff suffered the claimed distress." Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 995 (Pa. 1987). Thus, "to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury." Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super 1994).

Liberally construed, Plaintiff's complaint, and accompanying "Declaration of Facts," allege, inter alia, that the beating, assault and battery, and torture at the hands of the Allenwood Defendants in the "dryroom" as well as his incessant cries for medical care and to be removed from the cell with the white-supremacist, have caused him both physical and psychological damage. (Doc. No. 1 at 22.) Plaintiff further alleges in his "Declaration" that once transferred from FCI-Allenwood to FCI-McKean, the staff there, including Dr. Adamucci of Psychology, took at least 50 pictures of his wounds and prepared a report. (Doc. No. 1-2 at 2.) Considering these allegations, the Court is satisfied that Plaintiff has met the initial pleading requirements to allow this claim to proceed through screening.

### b. Pennsylvania - Civil Conspiracy (Count 3)

In Count 3 Plaintiff alleges civil conspiracy against all named Defendants by acting in a common purpose to torture, abuse, and torment him. (Id. at 23.) Under Pennsylvania law, to establish a prima facie case of civil conspiracy, a plaintiff must plead and prove: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act in furtherance of the conspiracy; and (3) actual legal damages. Costa, 2015 WL 1606714, at *9 (citing Goldstein v. Phillip Morris,

Inc., 854 A.2d 585, 590 (Pa. Super. 2004). Proof of malice, defined as an intent to injure, is required. Reading Radio, Inc. v. Fink, 833 A.2d 199, 212 (Pa. Super. 2003). The unlawful intent must be without justification. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). The elements of civil conspiracy may be proven circumstantially, so long as the evidence is "full, clear and satisfactory." Rumbaugh v. Beck, 601 A.2d 319, 327 (Pa. Super. 1991). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F2d 1396, 1405 n.16 (3d Cir. 1991).

Here, Plaintiff's vague and conclusory allegations of conspiracy fail to satisfy the specific pleading requirements set forth above. Indeed, Plaintiff does no more than refer the Court to 62 paragraphs included, by reference, in Count 3, and concludes that these "many overt-acts supra" committed by the Defendants were "in pursuit of their common unlawful purpose." (Doc. No. 1 at 23). Even assuming the Court could glean such an inference from the complaint, these allegations provide no substitute for the requirement that Plaintiff plead the circumstances of the conspiracy with specificity in order to place the Defendants on notice of the precise misconduct with which they are charged, such as the period of the conspiracy, the object of the conspiracy, and certain actions the alleged conspirators have taken to achieve that purpose. See Young, 926 F.2d at 1405 n.16. Accordingly, this claim will be dismissed without prejudice and Plaintiff will be granted leave to amend this claim in accordance with the above.

### c. Assault and Battery (Counts 4 and 5)

In Counts 4 and 5, Plaintiff claims that Defendants assaulted and battered him in the corridor of the SHU, dragged him down the stairs to a holding cell, beat him in the holding cell, sat

on his chest, and with unnecessary force, chained and shackled him so tightly that the chain cut through his flesh.  (Id. at 24, 25.)

In Pennsylvania, "an assault occurs when one acts with the intent to place another in reasonable and immediate apprehension of harmful or offensive contact, and that act does cause such apprehension.  Zimmerman v. Schaeffer, 654 F. Supp. 2d 226, 255 (M.D. Pa. 2009). Additionally, the actor must be in a position to inflict this contact and take some affirmative action to do so.  Picariello v. Fenton, 491 F. Supp. 1026, 1037 (M.D. Pa. 1980).  Battery, on the other hand, requires that the actor have the intent to cause harmful or offensive contact with the person, and that such contact actually occur.  Benjamin v. Fassnacht, 39 F.Supp. 3d 635, 648 (E.D. Pa. 2014).  "While corrections officers have the authority to use necessary force under appropriate circumstances, the reasonableness of this force in relation to their employment duties determines whether particular conduct is considered an assault and battery."  Tejada v. Dale, No. 14-CV-5604, 2015 WL 5729273, at *6 (E.D. Pa. 2015) (citing Picariello, 491 F. Supp. at 1038 (determining that "necessary touchings by correctional officers of inmates in the performance of their duties are not batteries, but privileged contacts.")).

Accepting the complaint's allegations as true, the Court is satisfied that Plaintiff has sufficiently pled the requisite elements comprising claims of assault and battery.  Accordingly, Counts 4 and 5 survive the screening requirements of the PLRA.

### d.  Negligence and Negligence Special Relationship (Counts 6 and 7)

In Pennsylvania, to prevail in a negligence action, a plaintiff must demonstrate the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff;

and (4) actual loss suffered by the plaintiff.  Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009).  In Pennsylvania, whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide.  Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993).  A duty can arise from the common law, statutes, or contract.  Hawley v. Delaware & Hudson Ry. Co., 514 F.Supp. 2d 650, 655 (M.D. Pa. 2007) (citations omitted).

Duty is predicated on the relationship between the parties and arises only when one engages in conduct that foreseeably creates an unreasonable risk of physical harm to others.  R.W. v. Manzek, 888 A.2d 740, 747 (Pa. 2005).  Mere knowledge of a harmful situation by one having the ability to intervene is insufficient to create a duty.  Wenrick v. Schloemann–Siemag Aktiengesellschaft, 564 A.2d 1244, 1248 (Pa. 1989).  Absent a special relationship with either an injured party[4] or a third person, a defendant is under no duty to control the conduct of third persons to prevent harm to others.  Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 40–41 (Pa. Super. 2000) (citing Restatement (Second) of Torts §§ 314–320)).

A defendant acts negligently and breaches an applicable duty by failing to exercise the ordinary care that a reasonably prudent person would exercise under like circumstances.  Merlini ex rel. Merlini, 980 A.2d at 506.  There must be a causal connection between defendant's breach of duty and plaintiff's injury.  Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).  A defendant's negligence is the proximate cause of plaintiff's injury if the negligent conduct is a substantial

---

[4] A special relationship that gives rise to a duty to aid or protect exists between (1) common carriers and passengers; (2) innkeepers and their guests; (3) a possessor of land who holds it open to the public; and (4) one who is required by law to take or who voluntarily takes custody of another.  Restatement (Second) of Torts § 314A.

factor in bringing about the harm inflicted upon the plaintiff. <u>Jones v. Montefiore Hosp.</u>, 431 A.2d 920, 923 (Pa. 1981).

In cases that involve federal prisoners, it has been recognized that the "BOP must exercise ordinary diligence in keeping prisoners safe and free from harm." <u>Fiore v. Holt</u>, 435 F. App'x 63, 66 (3d Cir. 2011); <u>see also</u> 18 U.S.C. § 4042 (prison officials have a duty of "ordinary diligence to keep prisoners safe from harm"). Here, while many of Plaintiff's allegations are conclusory, affording Plaintiff's pleadings with generous liberality, Plaintiff does provide that the Allenwood Defendants were negligent in failing to provide him with medical care and in their application of handcuffing him which caused him pain, bleeding and scarring. He also alleges that Defendants breached their duties as mandated by the BOP program statements (Doc. No. 1 at 26, 27), and sets forth those BOP policy statements that are implicated at page 9 of his complaint. Accordingly, Counts 6 and 7 survive the screening requirements of the PLRA.

C.    CONSPIRACY CLAIMS UNDER 42 U.S.C. § 1985(2) & 42 U.S.C. § 1985(3) (COUNTS 8, 9)

At Counts 8 and 9, Plaintiff alleges civil conspiracy pursuant to 42 U.S.C. § 1985(2), and § 1985(3), against all Defendants. In Counts 8 and 9, Plaintiff's allegations are identical and provide that "defendants . . . participated in actions . . . defined under the federal conspiracy law. These defendants in small groups or in large, met, conspired, planned toward common goals and objectives anytime, before and after meeting with Bakhtiari." (Doc. No. 1 at 28 ¶ 2.) Plaintiff continues and states that "the main goal of the conspiracy was evil, harmful and it was to deter Bakhtiari from reaching the courts and the justice system." (<u>Id.</u> at ¶ 3.)

Section 1985(2) contains two main bases for recovery: intimidating a witness and obstruction of justice.  See Horan v. Wetzel, No. 13-CV-140, 2015 WL 433661, at *6 (M.D. Pa. Feb. 3, 2015); 42 U.S.C. § 1985(2).  A proper claim under this section requires the plaintiff to allege either: (1) "a conspiracy to deter by force, intimidation, or threat, any party or witness in any court in the United States from attending such court, or from testifying in any matter pending therein"; or (2) "a conspiracy with the purpose of impeding, hindering, or obstructing, or defeating in any manner, the due course of any justice in any State or Territory, with intent to deny any citizen the equal protection of the laws."  42 U.S.C. § 1985(2).  While not specifically set forth by Plaintiff, the Court infers that he relies on the second half of § 1985(2), which guards against obstructions of justice "in any State or Territory," which seeks to deny another of the equal protection of the laws.  Id.

Section 1985(3) "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting § 1985(3)).

Both the second part of § 1985(2) and § 1985(3) are limited to conspiracies based on racial or some other class-based invidiously discriminatory animus.  Burgos v. Canino, 641 F. Supp. 2d 443, 457-58 (E.D. Pa. 2009) aff'd, 358 F. App'x 302 (3d Cir. 2009) ("The language requiring intent to deprive [another] of equal protection indicates that there must be some racial, or perhaps otherwise class-based discriminatory animus behind the conspirators' action.") (quoting Kush v. Rutledge, 460 U.S. 719, 726 (1983)).  Thus, to establish a claim for obstruction of justice under

the latter part of § 1985(2), a plaintiff must allege a "class-based, invidiously discriminatory animus." Id. (quoting Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976)); Griffin v. Breckenridge, 403 U.S. 88, 2012 (1971) (stating with regard to Section 1985(3) that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action").

Moreover, both § 1985(2) and § 1985(3) require a conspiracy. "The essence of a conspiracy is an agreement." United States v. Kelly, 892 F.2d 255, 258 (3d Cir. 1989). Startzell v. City of Phila, 533 F.3d 183, 2015 (3d Cir. 2008) (providing that to constitute a conspiracy, there must be a meeting of the minds). To state a conspiracy claim upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010). "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" Id. (Twombly, 550 U.S. at 556). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Gr., Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

Here, Plaintiff has failed to allege in Count 8 or 9 that Defendants conspired to injure and intimidate him because of his race or some other class-based, invidiously discriminatory motive. Moreover, Plaintiff's allegations that Defendants "conspired, planned toward common goals and objectives," and that this alleged "conspiracy and conspiratorial acts harmed [Plaintiff]," are mere

conclusions. (Doc. No. 1 at 28, 29). Plaintiff has neither alleged any facts indicating that all of the named Defendants communicated together or came to any agreement to conspire against him nor any facts from which a conspiratorial agreement can be inferred. He has similarly failed to address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve the purported purpose. Accordingly, as Plaintiff has failed to state a claim for conspiracy under § 1985(2) and § 1985(3), these Counts will be dismissed without prejudice to Plaintiff amending these claims. If Plaintiff decides to amend Counts 8 and 9, he is reminded that he must particularly allege each defendant that conspired to injure and intimidate him because of his race or due to some other class-based, invidiously discriminatory motive, and must allege specific facts from which a conspiratorial agreement can be inferred.

D.    CONSPIRACY CLAIMS UNDER 42 U.S.C. § 1986 (COUNT 10)

42 U.S.C. § 1986 imposes liability on an individual who has knowledge that a violation of § 1985 is about to be committed and who has the power to prevent commission of the same, but fails to do so. 42 U.S.C. § 1986. This claim is derivative of liability under § 1985 in that "it can only be pleaded once plaintiffs have sufficiently alleged a § 1985[] violation." Santiago v. Philadelphia, 435 F.Supp. 136, 156 (E.D. Pa. 1977) (internal citations omitted). Here, the Court finds that Count 10 is insufficient because it requires the underlying § 1985 violation to be adequately pleaded, which Plaintiff has failed to do. See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994) ("[T]ransgressions of § 1986 by definition depend on a preexisting violation of § 1985[.]") (citation omitted); Brawer v. Horowitz, 535 F.2d 830, 841 (3d Cir. 1976) ("Having failed to state a claim under § 1985(2), a fortiori [plaintiffs] failed to state a claim under § 1986.")

(citation omitted)).  As discussed above, Plaintiff has failed to adequately plead his § 1985(2) and § 1985(3) claims.  Consequently, because Plaintiff has failed to state a claim under § 1985, he necessarily has failed to state a claim under § 1986.  See White v. Wireman, No. 1:16-CV-675, 2017 WL 2215277, at *10 (M.D. Pa. May 19, 2017).  Thus, the Court will dismiss Count 10 of the complaint, but will grant Plaintiff leave to amend in accordance with the above.

E.     B<small>IVENS</small> C<small>LAIMS</small> (C<small>OUNTS</small> 11 – 19)

The last leg of Plaintiff's complaint contains Bivens claims.  At Count 11, Plaintiff alleges that Defendants Bittenbender, Brewagoner, Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, and Felton were deliberately indifferent to a serious medical need in violation of the Eighth Amendment.  In Count 12, Plaintiff alleges an excessive force claim against Defendants Felton, Martin, Reedy, Maize, Galloza, John Does 1-4, and Brewagoner in violation of the Eighth Amendment.  At Count 13, Plaintiff alleges an Eighth Amendment failure to protect claim against Defendants Felton, Martin, Reedy, Maize, Galloza, John Does 1-4, and Brewagoner.  In Count 14, Plaintiff alleges that Defendants Reedy and Galloza created a government or state created danger by placing him in a cell with a white-supremacist.  At Count 15, Plaintiff alleges a claim of First Amendment retaliation against Defendants Bittenbender, Brewagoner, Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, and Felton.  In Counts 16 and 17, Plaintiff alleges First and Fifth Amendment access-to-the-courts claims against Defendants Bittenbender, Brewagoner, Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton, and the AUSA's.  At Count 18, Plaintiff alleges a Fifth Amendment equal protection claim against all Defendants.  Finally, at

Count 19, Plaintiff asserts a Fifth Amendment due process violation as to his disciplinary hearings against Defendants Bittenbender, Tafleski, Qureishi, and the AUSA's.

"A Bivens action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law."

Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001). Specifically,

> Bivens creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official.". . . To state a claim under Bivens, the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States.

Naranjo v. Martinez, No. 4:CV–08–1755, 2009 WL 4268598, at *6 (M.D. Pa. Nov. 24, 2009) (citations omitted).

## 1. Official Capacity Claims

As an initial matter, sovereign immunity bars any claims brought against the above-captioned Defendants in their official capacities. Specifically, sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity. FDIC v. Meyer, 510 U.S. 471, 475 (1994). Indeed, "[a]n action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver." Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008); Webb v. Desan, 250 F. App'x 468, 471 (3d Cir. 2007).

Bivens does not waive sovereign immunity with respect to claims brought against federal employees sued in their official capacities. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a Bivens

claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a <u>Bivens</u> claim against the officer's employer, the United States, or the BOP."). Thus, Plaintiff's suit against the Defendants in their official capacities must be dismissed with prejudice. <u>Lewal</u>, 289 F. App'x at 516; <u>Webb</u>, 250 F. App'x at 471.

### 2. Eighth Amendment - Deliberate Indifference Claim (Count 11)

Plaintiff alleges that Defendants Bittenbender, Brewagoner, Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize and Felton exhibited deliberate indifference to his medical needs in violation of the Eighth Amendment. Plaintiff's Eighth Amendment claims are premised on two sets of allegations; namely, (1) that Defendants failed to properly treat him following the violent encounter with his cellmate as well as with the correctional officers, and (2) that Defendants withheld his prescription medication from him.

### a. <u>Personal Involvement</u>

Of the thirteen named Defendants in Count 11, Plaintiff does not provide any allegations against Defendants Bittenbender, Tafleski, Brewagoner and Maize in the context of this deliberate indifference claim. "Civil rights claims cannot be premised on a theory of <u>respondeat</u> <u>superior</u>. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." <u>Millbrook v. United States</u>, 8 F.Supp. 3d 601, 614 (M.D. Pa. 2014). Indeed, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate

particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (addressing § 1983 claim); Millbrook, 8 F.Supp. 3d at 614 (quoting Rode in the Bivens context). Because Plaintiff has failed to allege any facts which would demonstrate a plausible basis for the Court to infer personal involvement on the part of Defendants Bittenbender, Tafleski, Brewagoner and Maize, they will be dismissed from Count 11 with prejudice.

### b. **Failure to State a Claim**

In order to establish an Eighth Amendment deliberate indifference claim in the medical context, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facil., 318 F.3d 575, 582 (3d Cir. 2003). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Peterson v. Knauer, No. 03-5368, 2008 WL 509207, at *3 (E.D. Pa. Feb. 25, 2008) (explaining that the "the refusal to administer pain medication contrary to a surgeon's orders" may constitute deliberate indifference). Prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, see Young v. Kazmerski, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment, see White v. Napoleon, 897 F.2d 103, 108–10 (3d Cir.1990). Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment

claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91

F.3d 1023, 1024-25 (7th Cir. 1996); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994). Thus,

dissatisfaction with the course of medical treatment will not serve as the foundation for an Eighth

Amendment claim.

As noted above, Plaintiff advances two distinctively separate instances when he alleges he

was denied medical treatment and medicine for a serious medical need.  As it relates to his first set

of allegations, Plaintiff asserts that Defendants Trithol and Lozano refused his repeated requests to

contact health services and obtain written requests for his medicine.  (Doc. No. 1 at 11.)  However,

Plaintiff does not indicate what medicine he was in need of or what serious medical need he has

that required this unidentified medicine.  Accordingly, as to this event, the Court will dismiss

Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Trithol and

Lozano without prejudice to Plaintiff amending this Count in accordance with the above.

As it relates to his second set of allegations,  Plaintiff avers that he was denied medical

treatment after the alleged injuries from the beatings of the staff and his cell-mate, Champaign.

Plaintiff alleges that despite the visible bruises, bleeding, and wounds on his person, as well as his

continued requests for medical attention "on a daily basis," Defendants Lozano, Martin, Felton,

Slukom, Hause, Spaulding, Galloza, and Reedy refused to provide him with medical care.  (Id. at

19, 31.)  Rather, Plaintiff alleges that they retorted "talk about it to your next prison, you are being

transferred soon[.]"  (Id. at 19 ¶ 59.)  For purposes of screening, the Court is satisfied that Plaintiff

has met this pleading threshold as to this claim, as he has arguably alleged the existence of a

serious medical need and a refusal on the part of Defendants Lozano, Martin, Felton, Slukom, Hause, Spaulding, Galloza, and Reedy, to provide medical treatment for a non-medical reason.

### 3. Eighth Amendment – Excessive Force Claim (Count 12)

Plaintiff alleges an Eighth Amendment excessive force claim against Defendants Felton, Martin, Reedy, Maize, Galloza, John Does 1-4, and Brewagoner. (Doc. No. 32.) For instance, Plaintiff alleges the "beating[s]" he received by these defendants and the cutting of his flesh with excessively tight cuffs and chains were all excessive.

In an excessive force case, the court assesses whether prison officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992). A prisoner need not show significant injury; however, an objectively de minimis use of force is insufficient to establish an Eighth Amendment violation. Id. at 9–10. The Supreme Court has noted the following factors to determine whether a correctional officer used excessive force in contravention of the Eighth Amendment, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Giles v. Kearney, 571 F.3d 318, 327 (3d Cir. 2009) (same).

Here, accepting the factual averments in the complaint as true, the Court finds that Plaintiff has adequately stated an Eighth Amendment claim against the named Defendants.

**4. Eight Amendment – Failure to Protect (Count 13)**

Plaintiff alleges an Eighth Amendment failure to protect claim against Defendants Felton, Martin, Reedy, Maize, Galloza, John Does 1-4, and Brewagoner. This Count consists of two separate alleged instances of failure to protect. The first series of allegations are against these above named Defendants for failure to protect Plaintiff from these very Defendants who Plaintiff alleges severely beat him. (Doc. No. 1 at 33.) The second series of allegations are also against these same Defendants for failure to protect Plaintiff from his cell-mate, Champaign. (Id.)

Prison officials have a duty to protect prisoners from violence at the hands of others. Farmer v. Brennan, 511 U.S. 825, 833 (1994). Prison officials and employees may be liable for failing to protect an inmate from the use of excessive force if they are deliberately indifferent to a substantial risk of serious harm to the inmate. Id. at 834. To plead a viable Eighth Amendment failure to protect claim, a plaintiff must plead facts raising a reasonable inference of (1) a substantial risk of serious harm, (2) the defendant's deliberate indifference to that risk, and (3) causation. See Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir.1997). The plaintiff must show, among other things, that the guard was subjectively aware of a substantial risk of serious harm. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). A guard's subjective awareness has two elements: "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

As to the first series of allegations against the above-named Defendants for failure to protect Plaintiff from these very Defendants, construing Plaintiff's allegations liberally, the Court finds Plaintiff has met the pleading requirements for purposes of the PLRA.

Plaintiff's second series of allegations are against the same Defendants, but pertain to Defendants failure to protect him from his cell-mate, Champaign. (Doc. No. 1 at 33.) However, his one averment in Count 13 fails to meet the pleading requirements for a failure to protect claim. In this Count, Plaintiff does not allege a substantial risk of serious harm or that Defendants were deliberately indifferent to that risk. Accordingly, Count 13 as it relates to Defendants failure to protect Plaintiff against his cell-mate will be dismissed without prejudice. Plaintiff will be afforded an opportunity to amend this Count to cure the pleading defects identified above.

## 5. Fifth Amendment "Government or State Created Danger" Claim (Count 14)

Plaintiff alleges that Defendants Reedy and Galloza created a government or state created danger by placing him in a cell with a white-supremacist, Champaign. (Doc. No. 1 at 34.) The Third Circuit has noted that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Bright v. Westmoreland Cnty., 443 F.3d 276, 280 (3d Cir.2006) (citing DeShaney v. Winebago Cnty. Soc. Servs. Dep't, 489 U.S. 189, 195–96 (1989)). However, a "constitutional violation can occur when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state

intervention.'" <u>Id.</u> at 281 (quoting <u>Schieber v. City of Phila.</u>, 320 F.3d 409, 416 (3d Cir. 2003)).

This doctrine, known as the "state created danger" doctrine, has been approved by the Third

Circuit as a "mechanism for establishing a constitutional claim pursuant to 42 U.S.C. § 1983."

<u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1205 (3d Cir. 1996).

The Third Circuit has established a test with four essential elements to be proven under the

"state created danger" doctrine:

> (1) "the harm ultimately caused was foreseeable and direct;"

> (2) a state actor acted with a degree of culpability that shocks the conscience;

> (3) a relationship between the state and Plaintiff existed such that "Plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and

> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

<u>Bright</u>, 443 F.3d at 281 (quoting <u>Kneipp</u>, 95 F.3d at 1208, 1209 n.22; <u>Morse v. Lower

Merion Sch. Dist.</u>, 132 F.3d 902, 906, 913 (3d Cir. 1997)) (internal footnotes omitted).

Here, Plaintiff alleges that Defendants Reedy and Galloza knowingly and intentionally

created a danger for Plaintiff by placing him in a cell with Champaign.  (Doc. No. 1 at 34.)  He

alleges that despite his pleas to protect him from Champaign and the Defendants own knowledge

that harm was forthcoming, Defendants Reedy and Galloza knowingly and willfully disregarded

his safety.  (<u>Id.</u>)  Plaintiff further alleges that despite Plaintiff being in the care, control and

custody of the above Defendants who had a duty to protect him, they intentionally placed him in

this cell with Champaign when other cells were available.  (Id.)  Based upon these allegations, the Court is satisfied that Plaintiff has met the initial pleading requirements to allow this claim to proceed through screening.

### 6.  First Amendment Free Speech – Retaliation (Count 15)

In Count 15, Plaintiff alleges that Defendants Bittenbender, Brewagoner, Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, and Felton retaliated against him for practicing his right to free speech when he called BOP employees "rejectees."  (Doc. No. 35.)  "To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."  Bellaman v. Corbett, No. 9-CV-470, 2011 WL 2893644, at * 2 (M.D. Pa. July 15, 2011) (quoting case omitted).

Even construing Plaintiff's complaint liberally, the Court cannot discern what specific adverse acts of retaliation were taken against Plaintiff and which Defendants allegedly acted in a retaliatory manner.  Because Count 15 is completely silent as to any specific allegations on the part of any of the above named Defendants, Count 15 will be dismissed without prejudice.  Should Plaintiff amend Count 15, he is reminded that he must specifically allege the activity in question that is protected by the First Amendment and what retaliatory acts each Defendant is alleged to have committed.

### 7. **Access to Courts Claims (Counts 16, 17)**[5]

In Counts 16 and 17, Plaintiff alleges First and Fifth Amendment access-to-the-courts claims against Defendants Bittenbender, Brewagoner, Hause, Lozano, Trithol, Spaulding, Reedy, Martin, Tafleski, Slokum, Galloza, Maize, Felton, and the AUSA's. (Doc. No. 1 at 36 and 37.) In both Counts, Plaintiff asserts that "by their affirmative misconducts, interfered and hindered [Plaintiff's] efforts to reach the courts, the administrative remedies adjudicators, to preserve evidence, make copies, keep copies, obtain proper forms to exhaust administrative remedies. . . ." (Id.) Plaintiff's complaints appear to involve Defendants' responses, or lack thereof, to Plaintiff's grievance appeals.

#### a. **Failure to State a Claim**

Plaintiff's complaint is construed as predicating liability on the allegations that Plaintiff was denied access to the court due to Defendants' failure to respond to his grievances.[6]

---

[5] The Court construes Count 17 as a Fifth Amendment due process claim arising out of Defendants alleged interference with Plaintiff's access to the court. However, this claim ultimately fails to state a claim upon which relief can be granted for the same reasons Count 16 fails. Accordingly, the Court will dismiss Count 17 with leave to amend.

[6] As an initial matter, the Court must dismiss the claims brought against the AUSA Defendants (Blewitt, Theil, Hoffman, Mershimer, and Consiglio), with prejudice, as the complaint is devoid of allegations supporting their personal involvement. Additionally, any contested conduct alleged here against the AUSA's, which appears to be none, was of an official action taken by them in their role as prosecutors. As such their conduct is protected by the doctrine of prosecutorial immunity. "Principles of judicial immunity from suit enunciated in the context of § 1983 actions are equally applicable in the context of a Bivens action." Conway v. Lindsay, No. 7–1457, 2008 WL 2562949, at *1 n. 3 (M.D. Pa. June 24, 2008) (citing Brawer v. Horowitz, 535 F.2d 830, 834

"Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Id. (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)). Thus, to satisfy the requisite pleading requirements, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id. at 205–06 (footnote omitted) (citing Christopher, 536 U.S. at 416–17).

Here, Plaintiff has failed to plead facts supporting a First Amendment access-to-the-courts claim. Specifically, he has not offered factual allegations supporting an inference that he lost an opportunity to pursue a non-frivolous underlying claim, or that an alternative available remedy is nonexistent. Moreover, to the extent Plaintiff's allegations relate to the appeal of his grievances, Plaintiff has no constitutional right to a grievance process. See Jones v. N. C. Prisoners' Labor Union, Inc., 433 U.S. 119, 137-138 (1977) (providing that the law is well settled that there is no constitutional right to a grievance procedure). Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not give rise to a civil rights cause of action. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert denied, 488 U.S. 898 (1988);

---

(3d Cir. 1976)). Generally, the same principles apply to prosecutorial immunity. See Potter v. Deputy Attorneys Under Abraham, No. 08–1762, 2008 WL 5351929, at *1 (3d Cir. Dec. 23, 2008) (per curiam) ("Potter's Section 1983 claim against the deputy district attorneys was correctly dismissed because, among other reasons, the attorneys enjoyed absolute immunity.") (not precedential).

Hoover v. Watson, 886 F.Supp. 410, 418 (D. Del. 1995), aff'd 74 F.3d 1226 (3d Cir. 1995).

Accordingly, Counts 16 and 17 will be dismissed with prejudice.

### 8.  Fifth Amendment- Equal Protection Claim (Count 18)

In Count 18, Plaintiff alleges a Fifth Amendment equal protection violation against all

Defendants.[7]  The Equal Protection Clause of the Fourteenth Amendment requires all persons

"similarly situated" to be treated alike by state actors.  See City of Cleburne, Tex. v. Cleburne

Living Ctr., 473 U.S. 432, 439 (1985).  While the Fifth Amendment does not contain an equal

protection clause applicable to federal actors, the Fifth Amendment's due process clause has been

interpreted to contain an equal protection element, which proscribes racial discrimination to the

same extent as the Fourteenth Amendment's equal protection clause.  See Washington v. Davis,

426 U.S. 229, 239 (1976).  Hence, the Court will utilize the Fourteenth Amendment's framework

in analyzing the Fifth Amendment equal protection claims made by the Plaintiff.  Hart v. Whalen,

No. 3:08-CV-00828, 2009 WL 5173487, at *9 (M.D. Pa. Dec. 22, 2009).

Equal protection serves "to secure every person within the State's jurisdiction against

intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its

improper execution through duly constituted agents."  Vill. of Willowbrook v. Olech, 528 U.S.

564, 564 (2000) (citations omitted).  Traditionally, "[i]n order to establish a prima facie case of

discrimination under the Equal Protection Clause, [plaintiffs] need[ ] to prove that they were

members of a protected class [such as race or gender] and that they received different treatment

---

[7] It is clear, however, from the face of the complaint that while Plaintiff names all Defendants in this Count, the complaint contains no allegations of involvement as to AUSA Defendants, Defendant Tafleski, Defendant Qureishi, Defendant Bittenbender, or John Doe-3.  These Defendants will be dismissed from this claim.

than that received by similarly-situated individuals." <u>Oliveira v. Twp. of Irvington</u>, No. 00-3642, 41 F. App'x 555, 559 (3d Cir. July 25, 2002) (citing <u>Keenan v. City of Phila.</u>, 983 F.2d 459, 465 (3d Cir. 1992)).

Because the purpose of equal protection is to "protect persons, not groups," however, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. <u>Engquist v. Or. Dep't of Agric.</u>, 553 U.S. 591, 598 (2008) (citations omitted); <u>Vill. of Willowbrook</u>, 528 U.S. at 564. In order to raise such a claim, a plaintiff must allege that he has been irrationally singled out for disparate treatment. <u>Id.</u> "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" <u>Engquist</u>, 553 U.S. at 601 (quoting <u>Hayes v. Missouri</u>, 120 U.S. 68, 71-72 (1887)). "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." <u>Mosca v. Cole</u>, 217 F. App'x 158, 164 (3d Cir. 2007).

It is well settled, however, that a constitutional claim based only on verbal threats will fail if it is asserted under the Fifth Amendment. <u>See</u> <u>Pittsley v. Warish</u>, 927 F.2d 3, 7 (1st Cir.), <u>cert denied,</u> 502 U.S. 879 (1991). "Standing alone, simple verbal harassment does not constitute cruel

and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000). However, verbal harassment or threats, with some reinforcing act accompanying them may state a constitutional claim, as, for example, a case where some action was taken by a defendant that escalated beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir.1992) (a correctional officer placed a revolver to an inmate's head a threatened to shoot); Douglas v. Marino, 684 F.Supp. 395 (D.N.J. 1988) (involving prison employee who threatened an inmate with a knife.).

Accepting Plaintiff's allegations contained within his complaint as true, as we must, the Court finds that Plaintiff has arguably stated an equal protection claim against Defendants based on his allegations that Defendants treated him differently than similarly situated inmates without a rational purpose for doing so. Thus, the Court will allow Plaintiff's Fifth Amendment equal protection claim against Defendants Spaulding, Reedy, Hause, Galloza, Martin, Maize, Felton, Slukom, Lozano, John Doe-1 and John Doe-2 in Count 18 to survive screening review.

### 9. Fifth Amendment- Due Process Claim (Count 19)

Finally, at Count 19, Plaintiff alleges a Fifth Amendment due process violation as to his disciplinary hearings against Defendants Bittenbender, Tafleski, Qureishi, and the AUSA's. Plaintiff's final claim will be dismissed pursuant to Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997). In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the

"conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87.

In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the rationale in Heck to disciplinary proceedings, holding that the expungement of the inmate disciplinary proceeding would imply the invalidity of the underlying disciplinary action: "[t]he principal procedural defect complained of by the respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." Edwards, 520 U.S. at 646. Accordingly, an inmate may not bring a civil rights action for damages related to an inmate disciplinary proceeding without first challenging and overturning, via appropriate proceedings, the disciplinary hearing in question. Id. at 646-47.

Thus, under Heck and its progeny, Plaintiff's claim fails, as Plaintiff has not alleged facts demonstrating that the DHO's decision regarding the misconduct was invalidated on administrative appeal or through issuance of a writ of habeas corpus. Accordingly, this Count will be dismissed without prejudice. Plaintiff may amend this claim only to the extent he can establish through his allegations favorable termination of the underlying disciplinary proceedings.

    F.    LEAVE TO AMEND

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper

decision on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The United States Supreme Court, however, has stated that leave to amend under Rule 15 may be denied in cases of (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. See <u>Foman</u>, 371 U.S. at 182; <u>see also</u> <u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 204–05 (3d Cir. 2006) (stating that "leave to amend must generally be granted unless equitable considerations render it otherwise unjust"); <u>see also</u> <u>Long v. Wilson</u>, 393 F.3d 390, 400 (3d Cir. 2004) (stating "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment") (citations and internal quotation marks omitted); <u>Alvin v. Suzuki</u>, 227 F.3d 107, 121 (3d Cir. 2000) (summarizing factors to consider under Rule 15).

Based on the foregoing, the Court finds that certain claims may be amended. Specifically, Plaintiff will be permitted to amend the following claims against the following Defendants:

1. Plaintiff's FOIA claim against a proper institutional defendant;

2. Plaintiff's FTCA claim of civil conspiracy against the United States;

3. Plaintiff's claims of conspiracy under 42 U.S.C. § 1985(2), § 1985(3), and § 1986 against the particular Defendants that are alleged to have conspired against Plaintiff;

4. Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Trithol and Lozano in their individual capacities with regard to their alleged refusal to contact health services and obtain written requests for Plaintiff's medicine;

5. Plaintiff's Eighth Amendment failure to protect claim against Defendants Felton, Martin, Reedy, Maize, Galoza, and Brewagoner in their individual capacities with regard to these Defendants' failure to protect Plaintiff from his cell-mate;

6. Plaintiff's First Amendment retaliation claim against Defendants in their individual capacities; and

7. Plaintiff's Fifth Amendment due process claim against Defendant Bittenbender only to the extent Plaintiff can establish through his allegations favorable termination of the underlying disciplinary proceedings.

The Court finds the following claims survive screening but only as to the following Defendants:

1. Plaintiff's FTCA intentional infliction of emotional distress claim against the United States;

2. Plaintiff's FTCA assault and battery claims against the United States;

3. Plaintiff's FTCA negligence and negligence special relationship against the United States;

4. Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Lozano, Martin, Felton, Slukom, Hause, Spaulding, Galloza, and Reedy in their individual capacities with regard to their alleged denial of medical treatment for a non-medical reasons;

5. Plaintiff's Eighth Amendment excessive force claim against Defendants Felton, Martin, Reedy, Maize, Galloza, John Doe-2, and Brewagoner in their individual capacities;

6. Plaintiff's Eighth Amendment failure to protect claim against Defendants Felton, Martin, Reedy, Maize, Galloza, John Doe-2, and Brewagoner in their individual capacities with regard to these Defendants' failure to protect Plaintiff from these very same Defendants;

7. Plaintiff's <u>Bivens</u> state created danger claim against Defendants Reedy and Galloza in their individual capacities;

8. Plaintiff's Fifth Amendment equal protection claim against Defendants Spaulding, Reedy, Hause, Galloza, Martin, Maize, Felton, Slukom, Lozano, John Doe-1 and 2 in their individual capacities;

Plaintiff will be afforded an opportunity to file an amended complaint adhering to the standards set forth above. Specifically, should Plaintiff elect to file an amended complaint, he is advised that the amended complaint must be complete in all respects. It must be a new pleading which stands by itself without reference to the original complaint, "Declaration of Facts by Plaintiff," or any other documents already filed. The amended complaint should set forth his claims in short, concise and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered. It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts which he claims violated his rights. Mere conclusory allegations will not set forth a cognizable claim. Importantly, should Plaintiff elect to file an amended complaint, he must re-plead every cause of action in the amended complaint that the Court has found to be adequately pled in the current complaint because the amended complaint will supersede the original complaint. See Knight v. Wapinsky, No. 12-CV-2023, 2013 WL 786339, at *3 (M.D. Pa. March. 1, 2013) (stating that an amended complaint supersedes the original complaint). Because an amended complaint supersedes the original pleading, all causes of action alleged in the original complaint that are omitted from the amended complaint will be deemed waived. Id. (citations omitted).

## IV.  CONCLUSION

For the reasons set forth above, the complaint will be dismissed in part for failure to state a claim upon which relief can be granted. The Court will defer service of the original complaint to give Plaintiff an opportunity to file an all-inclusive amended complaint within thirty (30) days from the date of this Memorandum's corresponding Order. An appropriate Order follows.