**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALIREZA BAKHTIARI,** | : | |
| **Plaintiff** | : | **No. 1:17-cv-00016** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **STEVEN SPAULDING, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

<u>Pro se</u> Plaintiff Alireza Bakhtiari ("Bakhtiari"), is a former inmate previously confined at the Federal Correctional Institution Allenwood, in White Deer, Pennsylvania ("FCI-Allenwood"). (Doc. No. 24.) Bakhtiari filed this action on January 4, 2017, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 <u>et seq.</u>, <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1977), 42 U.S.C. § 1985, 42 U.S.C. § 1986, and the Freedom of Information Act ("FOIA"). (Doc. No. 1.) The Court screened the complaint pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), and on June 27, 2017, dismissed the complaint in part and granted Bakhtiari leave to file an amended complaint. (Doc. Nos. 19, 20.) Bakhtiari filed an amended complaint on August 8, 2017. (Doc. No. 24.)

Bakhtiari's amended complaint sets forth a total of twenty causes of action against the within-named Defendants, including FTCA claims of intentional infliction of emotional distress, conspiracy, assault, battery, medical and non-medical negligence, as well as <u>Bivens</u> claims of conspiracy, deliberate indifference to medical needs, excessive force, failure to protect, government-created danger, retaliation, equal protection, and due process violations pertaining to events that occurred at FCI-Allenwood between November 12, 2015 and March 10, 2016. (<u>Id.</u>) Bakhtiari's claims relate to allegations involving his placement in the Special Housing Unit ("SHU"), denial of medications, inhumane use of ambulatory restraints, and a failure to protect

him from a white supremacist inmate that Bakhtiari claims resulted in him being assaulted. (Id.)

Before the Court is Defendants' motion to dismiss and/or, in the alternative, for summary judgment (Doc. No. 50), and Bakhtiari's motion to disqualify counsel (Doc. No. 66).[1] On May 31, 2018, observing that Defendants raised the issue of whether Bakhtiari exhausted his administrative remedies in accordance with the PLRA, the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and by doing so, would consider matters outside the pleadings in its role as factfinder. [2] Defendants subsequently filed a supplemental brief. (Doc. No. 75.) Bakhtiari, however, has not filed a supplemental brief within the time prescribed by the Court. Rather, on September 25, 2018, the Court received and docketed a motion for leave to file a sur-reply.[3] (Doc. No. 80.) Accordingly, the motions are ripe for disposition.

## I.      STANDARD OF REVIEW

### A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss an action for lack of subject matter jurisdiction. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a facial challenge under Rule 12(b)(1), the standards associated with Rule 12(b)(6) are applicable. See id. In this regard, the Court must accept all factual allegations in the complaint as true, and the Court may consider only the complaint and documents referenced in or attached to the complaint. In a factual challenge to

---

[1] Bakhtiari has failed to file a brief in support of this motion as required by Local Rule 7.5, and accordingly, the Court deems this motion withdrawn. L.R. 7.5.

[2] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

[3] Despite the untimeliness of Bakhtiari's brief, the Court will grant his motion for leave to file the sur-reply (Doc. No. 80), deem it filed, and consider it in resolving the pending motion for summary judgment.

the Court's subject matter jurisdiction, the Court's analysis is not limited to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction. Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997).

Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. Mortensen, 549 F.2d at 891. If a dispute of material fact exists, "the [C]ourt must conduct a plenary hearing on the contested issues prior to determining jurisdiction." McCann v. Newman Irrevocable Tr., 458 F.3d 281, 290 (3d Cir. 2006); see also Berardi v. Swanson Mem'l Lodge No. 48, 920 F.2d 198, 200 (3d Cir. 1990) (stating that a district court must ensure that a plaintiff has "had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing," to support his claim of jurisdiction (citation omitted)).

**B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed

in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re

Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil

complaints must set out "sufficient factual matter" to show that their claims are facially

plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.

2009).  The plausibility standard requires more than a mere possibility that the defendant is liable

for the alleged misconduct: "[W]here the well-pleaded facts do not permit the [C]ourt to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P.

8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the

following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the

elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations

contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine

whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to

an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)

(internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on

a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the

complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents."  Mayer v.

Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document

filed pro se is "to be liberally construed."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se

complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**C.     Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56(a) provides for the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56

5

of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond the pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (stating that pro se parties "are

not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 U.S. Dist. LEXIS 64347, at *11 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## II. STATEMENT OF FACTS[4]

While incarcerated at FCI-Allenwood, Bakhtiari was issued Incident Report 2802858 by Defendant Galloza as a result of an attempted assault on Galloza by Bakhtiari. (Doc. No. 54 ¶ 1.) A hearing was conducted before a Discipline Hearing Officer ("DHO"), on February 3, 2016. (Id. ¶ 2.) The DHO concluded that Bakhtiari committed a Code 224A prohibited act of attempted assault and imposed sanctions, which included the disallowance of twenty days of

---

[4] The Local Rules for the Middle District of Pennsylvania provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. The factual background herein is taken principally from Defendants' statement of material facts, unless otherwise noted. (Doc. No. 54.) While Bakhtiari has filed a response to Defendants' statement of material facts (Doc. No. 63), it does not comply with M.D. Pa. L.R. 56.1, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." See Hammonds v. Collins, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)); see also M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1."); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) (stating that "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment"). Moreover, Bakhtiari's amended complaint is not executed as an unsworn declaration "under penalty of perjury" in accordance with 28 U.S.C. § 1746 and cannot be considered as evidence in opposition to Defendants' motion for summary judgment. Three Rivers Confections, LLC v. Warman, 660 F. App'x 103, 107 n.8 (3d Cir. 2016); Hatcher v. SCM Grp. N. Am., Inc., 167 F.Supp.3d 719, 729 (E.D. Pa. 2016); Crouse v. South Lebanon Township, 668 F.Supp.2d 664, 669 n.5 (M.D. Pa. Oct. 22, 2009); Kamuck v. Shell Energy Holding GP, LLC., 2015 WL 1345235, at *15 (M.D. Pa. Mar. 25, 2015).

good conduct time and forfeiture of sixty days of non-vested good conduct time. (Id. ¶ 3.) In reaching this decision, the DHO relied upon Galloza's description in the incident report, as well as surveillance footage and a memorandum prepared by paramedic Maize. (Id. ¶ 5.) The DHO provide that "[t]he video footage clearly depicts [Bakhtiari] being placed in his cell by Lt. Galloze. Prior to the cell door being secured, [Bakhtiari] is observed facing forward and making a lunging movement toward the door opening and the lieutenant at which time an immediate use of force was used to control the inmate." (Id.)

The Bureau of Prisons' ("BOP") SENTRY system of records indicates that Bakhtiari neither successfully overturned Incident Report 2802858 through the administrative remedy process nor challenged the same in a habeas corpus action. (Id. ¶ 8.) While Bakhtiari submitted Administrative Remedy 852511-R1 to the Northeast Regional Office on February 9, 2016 to appeal the DHO's decision regarding Incident Report 2802858, it was rejected as premature despite the fact that the DHO rendered a decision on February 4, 2016. (Id. ¶¶ 35, 36; Doc. No. 54-1 at 17; Doc. No. 63 ¶ 8.) Nevertheless, Bakhtiari resubmitted the appeal to the Regional Director with Administrative Remedy 852511-R2, which was denied. (Doc. No. 54 ¶¶ 37, 38.)

On November 19, 2015, Defendant Lozano issued Bakhtiari Incident Report 2785307, charging Bakhtiari with a Code 203 violation of threatening another with bodily harm. (Id. ¶ 9.) On December 4, 2015, the DHO found Bakhtiari guilty of the Code 203 violation of threatening another with bodily harm and imposed sanctions that included the disallowance of twenty-one days of good conduct time and the forfeiture of sixty days of non-vested good conduct time. (Id. ¶ 11.) The BOP's SENTRY system of records indicates that Bakhtiari never successfully overturned Incident Report 2785307 through the administrative remedy process, and that the same has not been challenged in a habeas corpus action. (Id. ¶ 14.)

Bakhtiari submitted Administrative Remedy 879573-A1 on September 26, 2016 to the Central Office, complaining that his appeals were not being answered. (Id. ¶ 39.) The Central Office rejected Administrative Remedy 879573-A1 because it was submitted at the wrong level. (Id. ¶ 40.) On October 3, 2017, Bakhtiari submitted Administrative Remedies 880983-A1 and 880894-A1 with the Central Office to complain that he did not receive a response to his appeal of DHO reports 2785307 and 2802858. (Id. ¶ 41.) The Central Office voided Administrative Remedy 880983-A1, remarking it was a duplicate appeal of Administrative Remedy 880984-A1. (Id. ¶ 42.) The Central Office subsequently rejected Administrative Remedy 880984-A1 due to Bakhtiari appealing more than one incident report on an appeal form and submitting the request or appeal to the wrong level. (Id. ¶ 43.)

BOP records also indicate that Bakhtiari filed two administrative tort claims while incarcerated. (Id. ¶ 15.) On October 28, 2016, the BOP accepted tort claim TRT-NER-2017-00506, which concerns the issues alleged in the instant action. (Id. ¶ 16.) On April 18, 2017, Regional Counsel Michael Tafelski denied tort claim TRT-NER-2017-00506. (Id. ¶ 17; Doc. No. 63 ¶ 17.)[5]

With regard to administrative remedies, the BOP has established an administrative remedy procedure to allow inmates to seek formal review of any issue relating to any aspect of confinement. (Doc. No. 54 ¶ 18.) Inmates must informally present their complaints to staff, and if the informal complaint is not resolved, they must submit a formal administrative remedy request to the warden using form BP-9 within twenty days following the date on which the basis for the request occurred. (Id. ¶¶ 19, 20.) If dissatisfied with the warden's response, the prisoner may submit an appeal to the Regional Director within twenty days of the warden's response

---

[5] Bakhtiari disputes this fact and claims that his tort claim was denied via a telephonic inquiry in December of 2016 when he called Tafelski's office.

using the BP-10 form.  (Id. ¶ 21.)  If dissatisfied with the Regional Director's response, the prisoner may then appeal to the BOP's Central Office, the final administrative appeal level, within thirty days of the Regional Director's response using form BP-11.  (Id. ¶¶ 22, 24.)  No administrative remedy appeal is considered to be fully exhausted until it is denied by the BOP's Central Office.  (Id. ¶ 25.)  There is an exception, however, for appeals of DHO decisions, which are first raised directly to the Regional Office level and then to the Central Office level.  (Id. ¶ 26.)  In order for an inmate to challenge a DHO's decision in which a DHO sanctions an inmate through the loss of good conduct time in a habeas action in federal court, the inmate's available administrative remedies must have been exhausted.  (Id. ¶ 27.)

In the ordinary course of business, the BOP maintains computerized indices of all administrative remedies filed by inmates in the SENTRY system of records.  (Id. ¶ 29.)  If an administrative remedy is rejected for a procedural deficiency, an administrative remedy coordinator returns the administrative remedy to the inmate along with a written notice explaining the reason for the rejection.  (Id. ¶ 32.)  BOP records indicate that Bakhtiari submitted eight administrative remedies between his arrival at FCI-Allenwood on August 31, 2015 and January 4, 2017, the date he initiated the instant action.  (Doc. No. 54 ¶ 33; Doc. No. 63 ¶ 33.)[6] Although Bakhtiari alleges that Defendants Lozano and Trythall failed to make arrangements for him to receive his medications while in the SHU, for a week beginning on November 12, 2015, the BOP's records indicate that he filed no administrative remedies between August 31, 2015 and February 19, 2016.  (Doc. No. 54 ¶ 34; Doc. No. 63 ¶ 34.)[7]

---

[6] Bakhtiari disputes that he filed eight remedies, but does not provide a specific number he claims to have filed.

[7] Bakhtiari claims that Defendants lost or shredded his filings while he was in the SHU.

On July 19, 2016, Bakhtiari filed Administrative Remedy 869504-F1 at the institutional level to complain of harassment at FCI-Allenwood, and Bakhtiari claims that while he attempted to file remedies at FCI-Allenwood, he filed his first BP-9 form on March 21, 2016, once he left FCI-Allenwood and while he was housed at FCI-McKean.  (Doc. No. ¶ 45; Doc. No. 63 ¶ 45.)

Administrative Remedy 869504-F1 was rejected as untimely.  (Doc. No. 54 ¶ 46.)  While Bakhtiari appealed the rejection to the Northeast Regional Office on August 17, 2016, the Regional Office rejected the remedy, noting that it concurred with the institution's determination that Administrative Remedy 869504-F1 was untimely because the incident complained of occurred in February, and his appeal was not received until July.  (Id. ¶¶ 47, 48.)  Nevertheless, Bakhtiari's allegations were forwarded for review.  (Id.)  On December 1, 2016, Bakhtiari filed Administrative Remedy 884585-R1 with BOP's Northeast Regional Office to complain about his placement in the SHU.  (Id. ¶ 49.)  The Regional Office rejected the remedy on December 2, 2016 because Bakhtiari did not first submit the claim at the institutional level.  (Id. ¶ 50.)

Anthony Delmonico is employed as a Correctional Counselor at FCI-Allenwood.  (Id. ¶ 52.)  As a Correctional Counselor, Delmonico is assigned to a number of inmates for whom he serves as the primary contact regarding a variety of institutional issues.  (Id. ¶ 53.)  Delmonico's position involves overseeing the resolution of informal administrative remedies.  (Id. ¶ 54.)  Bruce Beaver is employed by the BOP as a Deputy Case Management Coordinator at FCI-Allenwood (id. ¶ 55), and in this capacity, is familiar with the functions of an inmate's unit team and the role of correctional counselors, which includes coordinating the informal resolution of administrative remedies.  (Id. ¶ 56.)

When an inmate is unable to resolve an issue through informal resolution, correctional counselors deliver the BP-9 forms completed by inmates to the institution's administrative

remedy clerk so that she can enter and route the administrative remedy for a response form the warden. (Id. ¶ 57.) During Bakhtiari's time at FCI-Allenwood, from August 31, 2015, to March 10, 2016, he was assigned to Correctional Counselor Delmonico's caseload. (Id. ¶ 58; Doc. No. 63 ¶ 58.)[8] Even when an inmate is placed in the SHU at FCI-Allenwood, Delmonico conducts rounds several times each week to check on each of the inmates assigned to his caseload, although Bakhtiari disputes whether Delmonico ever visited him in the SHU. (Doc. No. 54 ¶ 62; Doc. No. 63 ¶ 62.)

It is Delmonico's standard practice to carry administrative remedy forms while conducting rounds in the SHU so that if an inmate requests such a document, he can provide one to any inmate on his caseload. (Doc. No. 54 ¶ 64; Doc. No. 63 ¶ 64.)[9] In the event Delmonico does not have a requested administrative remedy form, his practice is to retrieve the requested form and provide it to the inmate. (Doc. No. 54 ¶ 66.) If a unit team member or other institutional staff does not have an administrative remedy form when one is requested, those staff members notify an inmate's correctional counselor so that the counselor can provide the inmate with the administrative remedy form. (Id. ¶ 67.) After an informal remedy or institutional grievance form is completed, the inmate may return it to Delmonico if he is present in the SHU, or the inmate may submit the completed form(s) to any member of his unit team. (Id. ¶ 68.) Once an inmate completes an administrative remedy for regional or central office appeals, the inmate can hand his outgoing mail to any member of his unit team, although Bakhtiari disputes that any unit member ever visited him to discuss administrative remedies. (Id. ¶ 69; Doc. No. 63 ¶ 69.)

---

[8] While Bakhtiari claims that his counselor was Ken Flewelling until December of 2015 when he retired and was not assigned a new counselor, this is not supported by any evidence in the record.
[9] Bakhtiari also asserts that Delmonico never provided him with any administrative remedy forms.

## III.    DISCUSSION

### A.    Bakhtiari's <u>Bivens</u> Claims

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action.  <u>See</u> 42 U.S.C. § 1997e(a); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  <u>Williams v. Beard</u>, 482 F.3d 637, 639 (3d Cir. 2007); <u>Booth</u>, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); <u>see</u> <u>also</u> <u>Petrucelli v. Hasty</u>, 605 F. Supp. 2d 410 (E.D. N.Y. 2009) (providing that the PLRA's exhaustion requirement applies to <u>Bivens</u> claims).

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  <u>See</u> <u>Nyhuis v. Reno</u>, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  <u>See</u> <u>id.</u>  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004); <u>Oriakhi v. United States</u>, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court

consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to strictly comply with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused.  An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  Harris, 149 F. App'x at 59. Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  Warman, 49 F. App'x at 368.

Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Here, Defendants argue that Bakhtiari has failed to exhaust his administrative remedies with respect to any of the Bivens claims set forth in the amended complaint. (Doc. No. 55 at 12.) Defendants have supported this argument with record evidence, including the declarations of Anthony Delmonico, Bruce Beaver, and Matthew Lavelle, a senior attorney at FCI-Allenwood. (Doc. No. 54, Exs. 4, 5.) While Bakhtiari disputes that Delmonico was his Counselor while at FCI-Allenwood, he provides no evidence, via an affidavit, declaration, or otherwise, that refutes Defendants' evidence demonstrating that Delmonico was Bakhtiari's assigned counselor.[10] Defendants' evidence further demonstrates that administrative remedy forms were available to Bakhtiari while he was incarcerated at FCI-Allenwood, but that he failed to initiate the administrative remedy process within the applicable time period. (Id.)

In an attempt to refute Defendants' argument in favor of summary judgment, Bakhtiari merely relies on bare denials that administrative forms were available to him. (Doc. No. 63, ¶¶ 57-69.) While Bakhtiari does not provide a verified complaint, affidavit, declaration, or any other statement made under the penalty of perjury to support his denials,[11] he submits letters that

---

[10] Bakhtiari supplies a DHO Report that indicates that K. Flewelling had advised Bakhtiari of his rights before the DHO on November 26, 2015. (Doc. No. 62 at 73.) However, this Report does not contradict or refute that Delmonico was Bakhtiari's assigned counselor.

[11] In his sur-reply brief, Bakhtiari states that he presented his original "petition" and statements of material fact as declarations as opposed to affidavits. (Doc. No. 80-1 at 3.) However, upon review of these documents, the Court cannot locate any language in these documents indicating that the statements are "true under penalty of perjury." See 28 U.S.C. § 1746.

he purportedly mailed to Defendants to complain about the alleged failure to respond to his administrative remedies. (Doc. No. 62 at 21-24, 27-31, 37-46.) The Court notes that these exhibits demonstrate that Bakhtiari allegedly submitted administrative remedies between March 21, 2016 and November 14, 2016. (Id.) However, even if taken as true, because these remedies were submitted after the twenty-day period following the incidents that allegedly occurred in November of 2015 and January of 2016, they were properly rejected as untimely, and therefore, unexhausted. (Id.) Moreover, none of the letters submitted by Bakhtiari as exhibits demonstrates that Bakhtiari complained about being refused forms or denied access to the administrative remedy process while at FCI-Allenwood. (Id.)

In an addition to the above, the Court notes various inconsistencies within Bakhtiari's own counterstatement of facts regarding his access to administrative remedy forms at FCI-Allenwood. For instance, in response to Defendants' statement of fact located at numbered paragraph 34, which provides: "Although Bakhtiari alleges that Defendants Lozano and Trythall failed to make arrangements for him to receive his medications while in the [SHU] for a week beginning on November 12, 2015, the BOP's records of Bak[h]tiari's administrative remedy submissions indicates he filed no administrative remedies between August 31, 2015 and February 19, 2016" (Doc. No. 54 ¶ 36), Bakhtiari states: "Disputed. Defendants either lost or simply shredded plaintiff's filings from the solitary confinement. They also refused to make copies for him. Inmates in solitary conf[inement] do not have copy machines in their cells to maintain their record[s]. They rely on the guards to honestly deliver their legal mails, or make copies. Defendants refused to do both" (Doc. No. 63 ¶ 34). The inconsistency in Bakhtiari's position is that he alleges that he was never provided with any administrative remedy forms in order to exhaust his remedies, but also claims that Defendants lost, shredded, or never delivered

the administrative remedy forms he submitted at FCI-Allenwood.  (See id. ¶¶ 29, 34, 59-61) (alleging that he was unable to exhaust his remedies because Defendants "magically" made administrative remedy filings "disappear[]"; Defendants "lost or simply shredded his filings from solitary confinement"; or that his filings were "spoliated, shredded, never delivered, or rejected with no explanation").

In light of the undisputed facts and relevant evidence of record, the Court concludes that Bakhtiari has failed to produce sufficient evidence to overcome Defendants' summary judgment motion, and cannot argue against summary judgment by merely relying on unsupported assertions, inferences based upon a speculation or conjecture, or unverified, conclusory allegations in his complaint.  Under Rule 56, Bakhtiari was required to go beyond his pleadings with affidavits or the like in order to establish the existence of a genuine dispute of material fact. See Celotex Corp., 477 U.S. at 324.  Because he has failed to do so, the Court concludes that Bakhtiari has not properly exhausted any of his Bivens claims, and Defendants are entitled to the entry of summary judgment in their favor.[12]

## B. Bakhtiari's FTCA Claims

Bakhtiari's remaining claims consist of FTCA claims asserted against the United States. (Doc. No. 24.)  Defendants argue that these claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Bakhtiari filed this action prior to the BOP's denial of his FTCA claim.  (Doc. No. 55 at 41.)  The FTCA constitutes a statutory waiver of sovereign immunity for tort claims, Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997), and allows the government to be sued "in the same manner and to the same

---

[12] Because the Court is granting Defendants' motion for summary judgment as to Bakhtiari's Bivens' claims based upon his failure to exhaust his administrative remedies, the Court need not address Defendants' alternative summary judgment arguments.

extent as a private individual under like circumstances."  See 28 U.S.C. § 2674.  However, because the FTCA is an express waiver of sovereign immunity, strict compliance with its provisions is required.  Livera v. First Nat'l Bank, 879 F.2d 1186, 1194 (3d Cir. 1989).

A prerequisite to suit under the FTCA is that a claim must first be presented to the Federal agency and be denied by that agency.  Specifically, the FTCA provides:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely."  Wilder v. Luzinski, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000) (citing McNeil v. United States, 508 U.S. 106 (1993)).

Thus, prior to commencing an FTCA action against the United States in federal court, a plaintiff must "first present [ ] the claim to the appropriate [f]ederal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a). A claim is considered to be presented when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain, in the form prescribed by the applicable federal regulations.  28 C.F.R. § 14.2(a). If the receiving federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA.  28 U.S.C. § 2675(a).

The Third Circuit has instructed that "[i]n light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United

States . . . the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (citing Livera, 879 F.2d at 1194). The Supreme Court has likewise explained that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil, 508 U.S. at 113 (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the federal lawsuit is filed). As a result, a district court may dismiss a claim brought under the FTCA for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the plaintiff has not exhausted his administrative remedies prior to filing suit. See, e.g., Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir. 2011); Accolla v. United States Gov't, 369 F. App'x 408, 409-10 (3d Cir. 2010) (finding the district court properly dismissed FTCA claim where the plaintiff filed federal suit prior to exhausting administrative remedies). Furthermore, the filing of an amended complaint after an unexhausted claim is presented to the Court does not cure the infirmity. See Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).

Here, the evidence of record submitted by Defendants demonstrates that the BOP accepted Bakhtiari's tort claim TRT-NER-2017-00506 in October 2016 (Doc. No. 54 ¶¶ 15-16), and on April 18, 2017, issued a denial of tort claim TRT-NER-2017-00506 (id. ¶ 17, id. at 53). Bakhtiari does not dispute the date that the BOP accepted the tort claim. (See Doc. No. 63, ¶ 16.) Rather, Bakhtiari claims that in December of 2016, "via a telephonic inquiry from [Tafleski's] unit team's office . . . [Bakhtiari] obtained confirmation from Tafleski'[s] office that the claim had been denied." (Id. ¶ 17.) If the tort claim had been denied in December of 2016, then Bakhtiari's filing of the instant lawsuit on January 4, 2017, would not be premature.

The Court concludes that Bakhtiari's FTCA claims have been filed prematurely.

Defendants have supported their argument with record evidence, including tort claim TRT-NER-2017-00506, as well as the denial letter dated April 18, 2017. (Doc. No. 54 ¶¶ 15-17.)

Defendants further support their position by providing the declaration of Michelle Wirth, a paralegal specialist at FCC-Allenwood. (Doc. No. 75 at Ex. 1.) The Wirth declaration confirms that Bakhtiari's administrative tort claim was received on October 27, 2016 by the Northeast Regional Office, and an October 28, 2016 letter acknowledged receipt of the same. (Id., Ex. 1 ¶ 3.) Wirth further declares that the investigation of claim TRT-NER-2017-00506 was not completed until March 28, 2017, that the investigation was uploaded for the region to access on March 30, 2017, and that on April 18, 2017, a denial letter was mailed to Bahktiari. (Id. Ex. 1. ¶¶ 4, 5.) Bakhtiari filed the instant complaint on January 4, 2017, well before the denial letter was ever mailed.

Rather than submitting any evidence to dispute that his tort claim was denied on April 18, 2017, Bakhtiari attempts to create a genuine dispute of material fact by providing an unsupported and unverifiable statement, through his unverified counterstatement of facts, that he obtained confirmation of the denial of his tort claim from Tafleski's office over the telephone in December of 2016. (Doc. No. 63 ¶ 17; Doc. No. 80-1 at 4.) However, this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." Hammonds, 2016 WL 1621986, at *3 (citation omitted). Moreover, the record evidence, including the Wirth declaration, executed under penalty of perjury pursuant to 28 U.S.C. § 1746, confirm that the administrative tort claim denial letter was dated April 18, 2017, and the investigation into the tort claim was not completed until March 28, 2017, well after Bakhtiari's allegation that he received a telephonic denial of the claim in December of 2016.

Importantly, the statutory language set forth in the administrative tort claim procedure specifically provides that "[a]n action shall not be instituted against the United States . . . unless the claimant shall have first presented the claim to the appropriate [f]ederal agency and his claim shall have been <u>finally denied by the agency in writing</u> and sent by certified or registered mail." 28 U.S.C. § 2675(a) (emphasis added). "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely." <u>Wilder</u>, 123 F. Supp. 2d at 313 (citation omitted). Bakhtiari's assertion that he was told that his administrative tort claim was denied sometime in December of 2016 simply lacks support from both the record and the FTCA's language, which provides that a claim is finally denied when the claimant receives the denial in writing, rather than in the form of a telephone call. <u>See</u> 28 U.S.C. § 2675(a). Accordingly, the Court is without jurisdiction to hear Bakhtiari's FTCA claims as they have been filed prematurely.[13]

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss and/or, in the alternative, for summary judgment (Doc. No. 50), will be granted, and Bakhtiari's motion to disqualify counsel (Doc. No. 66), will be deemed withdrawn as a result of Bakhtiari's failure to file a brief in support in accordance with L.R. 7.5. The Court will also grant Bakhtiari's motion for leave to file a sur-reply (Doc. No. 80), and deem the sur-reply (Doc. No. 80-1), as filed. An appropriate Order follows.

---

[13] Because the Court lacks jurisdiction over Bakhtiari's FTCA claims, the Court need not address the remaining alternative arguments set forth by Defendants.